592 S.E.2d 344

The STATE, Appellant,

v.

Muttaquin ABDULLAH aka Clayton Pinckney, Respondent.

No. 3721.

Court of Appeals of South Carolina.

Heard Nov. 5, 2003.

Decided Jan. 12, 2004.

Rehearing Denied Feb. 20, 2004.

---

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Warren Blair Giese, of Columbia, for appellant.

Assistant Appellate Defender Aileen P. Clare, of S.C. Office of Appellate Defense, of Columbia, for respondent.

KITTREDGE, J.:

Muttaquin Abdullah was indicted for possession with intent to distribute marijuana and possession with intent to distribute marijuana within a one-half mile proximity of a school. In pre-trial proceedings, Abdullah moved to suppress evidence seized in a warrantless search, contending that the search and seizure violated the Fourth Amendment. The circuit court granted the motion to suppress. The State appeals, claiming the circuit court erred in finding a Fourth Amendment violation of Adbullah's rights.[1] We reverse.

---

1. We review this interlocutory appeal under *State v. McKnight*, 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985) and *State v. Henry*, 313 S.C. 106, 108, 432 S.E.2d 489, 490 (Ct.App.1993). Those cases provide, in pertinent part, that "a pre-trial order granting the suppression of evidence which significantly impairs the prosecution of a criminal case is directly appealable under S.C.Code Ann. 14–3–330(2)(a) (1976), which permits appellate review of [a]n order affecting a substantial right made in an action when such order ... in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action."

## FACTS

Shortly before 1:00 a.m. on October 4, 2000, two officers of the Columbia Police Department, while on uniform patrol, responded to a call regarding a burglary in process at 34–F Bethel Bishop Apartments within the Columbia city limits. While en route, the officers also received a report of "shots fired" at the apartment.

Upon arriving at the scene, the officers observed the door to apartment 34–F open, and they entered the doorway. One of the officers, Jesse Carrillo, saw "a black male subject in some black shorts or something . . . [a]nd when he saw us, he just kind of stood in the door right there and basically refused to come out as we were trying to call him out because we didn't know who he was." The man the officers observed was Abdullah.

The officers sought cooperation from Abdullah, who instead moved near a bedroom door where he stood in a manner such that his left side was shielded from the officers' view. According to Abdullah, he moved toward the bedroom door so that he could toss into the bedroom a gun left by purported burglars shortly before the officers arrived.

After unsuccessfully "pleading" with Abdullah to cooperate, Officer Carrillo "reached in and grabbed" Abdullah in an effort "to pull him out of the bedroom." A struggle ensued and, due to Abdullah's superior size and strength, Officer Nelson joined with Officer Carrillo in the struggle. During the struggle, Abdullah announced he was the victim of the burglary and had called 911. The officers intended to handcuff Abdullah with his hands behind him, as required by procedure, but were unable to do so. They eventually managed to handcuff one of his wrists to a chair in the kitchen.

At this point, the officers knew neither the accuracy of Abdullah's claim to be a victim nor the security status of the apartment. They had observed bullet holes outside the apartment door and inside the apartment. As the officers sought Abdullah's cooperation, they observed bullet holes in the walls of the apartment. Once Abdullah was secured, Officer Carrillo described the officers' perspective and concerns as follows:

> [W]e don't know if we've got additional victims down that are going to need medical assistance. We don't know if

we've got subjects hiding. We don't know who else is in there. So that's why we've got to clear it essentially for persons for safety reasons ... we still didn't know if we had people in there because that was as far as I had gotten.... We didn't know even at that point if there were more suspects in there ... so we wanted to basically contain the apartment ... with this alleged burglary in progress so that way we could make sure we didn't have anymore victims in there, anymore suspects.

Consequently, Officer Carrillo conducted a protective sweep of the apartment to search for victims, suspects, and to preserve the crime scene. He went to the doorway of the bedroom where Abdullah had been standing. Light from the kitchen partially illuminated the bedroom, enabling Officer Carrillo to see Adbullah's previously discarded gun lying on the bed. Officer Carrillo then turned on the bedroom light, at which time he saw money, drug paraphenalia, and bags containing green, leafy material he believed was marijuana.

Officer Carrillo immediately contacted his supervisor, who obtained a search warrant from a magistrate and summoned narcotics agents. The contraband was seized pursuant to a search warrant, and the green, leafy material was later determined to be marijuana. Abdullah was charged and indicted for possession with intent to distribute marijuana and possession with intent to distribute marijuana within one-half mile proximity of a school.

At trial, Abdullah moved to suppress the evidence seized, contending that the search and seizure violated the Fourth Amendment. The circuit court granted the motion to suppress, concluding that no exigent circumstances existed to justify the warrantless search. The State appeals.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). On appeal from a suppression hearing, this court is bound by the circuit court's factual findings if any evidence supports the findings. *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000). In an appeal from a motion to suppress evidence based on Fourth Amendment grounds,

an appellate court may conduct its own review of the record to determine whether the evidence supports the circuit court's decision. *See State v. Khingratsaiphon,* 352 S.C. 62, 70, 572 S.E.2d 456, 460 (2002) (stating *"Brockman* does not hold the appellate court may not conduct its own review of the record to determine whether the trial judge's decision is supported by the evidence").

## LAW/ANALYSIS

The State argues that the circuit court erred in granting Abdullahs motion to suppress evidence obtained during its warrantless search of the apartment, contending the search did not violate the Fourth Amendment to the United States Constitution. We agree.

Through its exclusionary rule, the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Similarly, the South Carolina Constitution provides protection against unlawful searches and seizures. *See* S.C. Const. art. I, 10. Evidence seized in violation of the Fourth Amendment is excluded in both state and federal court. *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Forrester,* 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001).

Generally, a warrantless search is per se unreasonable and thus violative of the Fourth Amendments prohibition against unreasonable searches and seizures. *State v. Bultron,* 318 S.C. 323, 331, 457 S.E.2d 616, 621 (Ct.App.1995). However, a warrantless search will withstand constitutional scrutiny where the search falls within one of a few specifically established and well delineated exceptions to the Fourth Amendment exclusionary rule. *Id.,* 318 S.C. at 331–32, 457 S.E.2d at 621. In such cases, the burden is upon the State to justify a warrantless search. *State v. Bailey,* 276 S.C. 32, 35, 274 S.E.2d 913, 915 (1981). The State contends that the warrantless search in the present case fell within exceptions to the Fourth Amendment provided by the exigent circumstances doctrine and the plain view doctrine.

## I. Exigent Circumstances

 Law enforcement officials have long been permitted to act without the permission of a magistrate when the exigencies of the situation [have] made that course imperative. *McDonald v. U.S.*, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). The exigent circumstances doctrine provides an exception to the Fourth Amendments protection against warrantless searches, but only where, from an objective standard, a compelling need for official action and no time to secure a warrant exist. *State v. Brown*, 289 S.C. 581, 587, 347 S.E.2d 882, 886 (1986) (quoting *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)). For instance, a warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling. *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In such circumstances, a protective sweep of the premises may be permitted. *See Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (allowing a protective sweep of a house during an arrest where the officers have a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene); *see also Brown*, 289 S.C. at 587, 347 S.E.2d at 886 (agreeing that police may be justified in conducting a protective sweep of a crime scene where the potential for danger exists). Additionally, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).[2]

 In the present case, the officers were responding to a call reporting burglary and gunfire. They arrived at the scene to discover an uncooperative person, Abdullah, who only attempted to identify himself as the alleged victim after the officers abandoned their reasonable but futile efforts to secure

2. In light of the uniformity and well-settled nature of exigent circumstances law in federal and state courts throughout the United States, we elect not to burden the reader with unnecessary case citations. For the reader desiring additional authority, we refer generally to 68 Am.Jur.2d *Searches and Seizures* § 134 (Supp.2003).

his cooperation and instead turned to physically subduing him. Additionally, the officers observed bullet holes inside and outside the walls of the premises. We are firmly persuaded from our review of the record that the totality of the circumstances, including Abdullahs unsettling behavior and the evidence of a violent crime and gunfire, gave the officers highly reasonable grounds from an objective standard for searching the premises with the dual goals of securing the scene against perpetrators and facilitating assistance to possible victims. Moreover, the immediate need to secure the premises and assist potential victims provided no time for the officers to obtain a warrant before conducting their sweep of the crime scene. Thus, we find the State met its burden of proof in demonstrating that exigent circumstances existed to permit the States warrantless search of the premises where Abdullah and the drugs were lawfully found.[3]

Accordingly, we find no evidence in the record to support the circuit court's assessment that, once [the officers] handcuffed [Abdullah] to the chair, there werent any exigent circumstances anymore. We find this basis for the circuit courts ruling improvidently presupposes that subduing and securing Abdullah foreclosed the officers objectively reasonable need to search the crime scene for suspects and victims.

## II. Plain View Doctrine[4]

Under the plain view doctrine, any object falling within the plain view of a law enforcement officer who is lawfully in a position to view the object is subject to lawful seizure. *Brown*, 289 S.C. at 588, 347 S.E.2d at 885. The plain view exception to the warrant requirement requires that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating [nature of the] evidence was

---

3. The reasonableness of the officers' conduct may be further gleaned from the decision to secure a warrant to seize the contraband once the protective sweep was concluded and exigent circumstances unquestionably ceased to exist.

4. We address the applicability of the plain view doctrine although the evidence was technically seized pursuant to a warrant. It is readily apparent that the basis for the issuance of the warrant was Officer Carrillo's plain view observation of the contraband.

immediately apparent to the seizing authorities. *State v. Culbreath,* 300 S.C. 232, 237, 387 S.E.2d 255, 257 (1990).[5]

■ Here, Officer Carrillos initial intrusion into the room containing the evidence was lawful because he was properly conducting a protective sweep to secure the premises. His discovery of the gun, money and drugs was clearly inadvertent, because he was searching for other victims or suspects and securing the scene. Finally, Officer Carrillo testified that the incriminating nature of the gun, money, and bags of marijuana was immediately apparent to him. Thus, we find that the items seized during the search, and suppressed at trial, were clearly within Officer Carrillos plain view. Moreover, we note that Abdullahs own attorney acknowledged before the circuit court that the officers saw the drugs in plain view after they entered the house.

We respectfully find the circuit courts reliance on *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) to defeat the States plain view argument is misplaced. In *Hicks,* the officer had to move a stereo to read its serial number and identify it before he had probable cause to seize it. In contrast, Officer Carrillo had probable cause to seize the evidence, without ever touching or moving it, because of his lawful presence and immediate observations that the evidence was incriminating. Thus, *Hicks* is clearly distinguishable from the present case.

We also respectfully reject the circuit courts reasoning that turning on the bedroom light negated the application of the plain view exception to the warrant requirement. In *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), an officer shined a flashlight into a vehicle and saw contraband. The United States Supreme Court held that the evidence was in plain view despite the use of artificial illumination. *Id.* at 740, 103 S.Ct. 1535. The Court stated that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment pro-

---

5. However, the United States Supreme Court has concluded that the plain view exception to the Fourth Amendment's warrant requirement applies even if the discovery of the evidence was not inadvertent, if the other requirements of the exception are satisfied. *Horton v. California,* 496 U.S. 128, 130, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

tection. *Id.* Similarly, our supreme court in *State v. Culbreath* found that evidence was in plain view, and subject to warrantless search and seizure, when an officer inadvertently discovered the evidence by shining his flashlight into a suspects car due to legitimate concerns about the suspects safety. *See also State v. Daniels,* 252 S.C. 591, 596, 167 S.E.2d 621, 624 (1969) (finding the use of a flashlight in a lawful search of a suspects car is of no real consequence when the evidence found had been left in a place where it could be easily seen). Accordingly, we find Officer Carrillos use of the bedroom light, particularly under the exigent circumstances, was proper, and the evidence seized was in plain view notwithstanding the use of artificial illumination.

## CONCLUSION

We conclude that the circuit court erred in suppressing the evidence. Due to the manifest presence of exigent circumstances and the application of the plain view doctrine, the search did not violate the Fourth Amendment and the evidence was properly seized. The circuit court's decision is

**REVERSED.**

HEARN, C.J., and HOWARD, J., concur.