Aggressive driver unit stopped car because it was going 60 mph and only 
approximately 1 car length behind another car, and it 

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD 
 NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State,       
 Respondent,
 
 
 

v.

 
 
 
Gustavo Alvarado,       
Appellant.
 
 
 

Appeal From Greenville County
John W. Kittredge, Circuit Court Judge

Unpublished Opinion No. 2005-UP-120
Heard January 11, 2005  Filed February 
 16, 2005   

AFFIRMED

 
 
 
Jeffrey Falkner Wilkes and Richard Harold Warder, both of 
 Greenville, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliot, 
 Assistant Attorney General David A. Spencer, all of Columbia; and Solicitor 
 Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER CURIAM:  Gustavo Alvarado appeals his 
 conviction for trafficking in marijuana.  We affirm.
FACTS
 On December 13, 2001, Chris Hines, a deputy with 
 the Greenville County Sheriffs Department, was patrolling Interstate 85 looking 
 for instances of aggressive driving, such as following too closely, improper 
 lane changes, and various trucking violations.  During the early evening hours, 
 Hines noticed a 1997 dark maroon Honda Accord tailgating and drifting onto the 
 lane divider. This observation prompted Hines to follow the car, turn on his 
 in-car video camera, and call out a traffic stop with his dispatch. 
Hines then stopped the car; however, because of 
 the heavy traffic on the highway, he went to the passenger side of the car and 
 requested the occupant in the front passenger seat to open the window.  When 
 the passenger opened the window about four or five inches, Hines immediately 
 detected an overwhelming odor of air freshener as well as a faint odor of raw 
 marijuana from inside the vehicle.
Alvarado, who was driving the car, produced a drivers license.  
 Following standard procedure, Hines further requested the vehicle registration 
 and insurance information.  After Alvarado produced these documents, Hines noticed 
 the proof of insurance had expired and instructed Alvarado to step to the rear 
 of the car.  
Hines then requested the passenger to look in 
 the glove box to locate current registration and insurance information on the 
 car.  Hines also asked the passenger his name and relationship to the driver.  
 The passenger produced identification from a company in Delaware that gave only 
 his name.  He also stated he was just a friend and his date of birth was October 
 10, 1977. 
After calling dispatch to check for warrants on 
 both Alvarado and his passenger, Hines learned that Spartanburg County had an 
 active warrant for someone with the same name as the passenger but a date of 
 birth of September 15, 1981.  In addition, the passenger appeared to Hines to 
 be in his late teens.  Hines attempted to verify the passengers age with Alvarado, 
 and based on what Alvarado told him, determined that the passenger may in fact 
 be the subject of the warrant.  Because of Hines concerns about the smells 
 emanating from the car and conflicting information from Alvarado about the passenger, 
 he kept Alvarado and the passenger separated and called for a backup as well 
 as a narcotics K-9 officer.  
Hines testified he gave Alvarado warning tickets 
 for following too closely and the lane change violation.  He further testified 
 that he asked Alvarado if there was marijuana in the car and Alvarado hung his 
 head and answered there was not.  In contrast, when Hines inquired about cocaine 
 in the car, Alvarado raised his head and denied it.  When Hines asked a second 
 time about marijuana, Alvarado denied it, but again hung his head and avoided 
 eye contact.  In addition, Alvarado refused to allow a search of the car, even 
 after Hines explained to him that as the driver, he had authority to consent.  

When the backup officers arrived, the 
 passenger finally gave a correct date of birth matching what was on the warrant.  
 In addition, Deputy Teddy Hampton with the K-9 unit testified that contrary 
 to the usual practice, his K-9 dog abruptly pulled him to the rear of the vehicle 
 and scratched the bumper to indicate it had found something. 
 [1]   
Upon opening the trunk, Hines found 
 a U-Haul box.  When he pulled back one part of the lid of the box, he discovered 
 marijuana wrapped in brown packing tape.  Officers then placed Alvarado under 
 arrest.  
In addition to the U-haul box, officers 
 recovered a large garbage-style black plastic bag also contained marijuana.  
 Inside this bag was a white trash bag with marijuana and several other smaller 
 bags or bundles of marijuana.  During a search of the interior compartments 
 of the car, officers found a set of scales used to weigh small items and a green 
 pipe with a drawing of a skull on it.  In addition, Hampton, who searched Alvarado 
 incident to his arrest, found a wad of cash on Alvarados person, which, Alvarado 
 said, was around $700 but actually turned out to be more than that amount.
The Greenville County grand jury indicted 
 Alvarado for the offense of trafficking in marijuana.  Following a jury trial 
 in November 2002, Alvarado was found guilty as charged and sentenced to serve 
 eighteen years and fined $15,000.  This appeal followed.
DISCUSSION
1.  Alvarado argues the 
 trial court should have suppressed the drugs because the traffic stop was pretextual 
 and the stop and resulting search were therefore unlawful.  We disagree.
In an appeal from a motion 
 to suppress evidence based on Fourth Amendment grounds, an appellate court may 
 conduct its own review of the record to determine whether the evidence supports 
 the circuit courts decision. [2]   Nevertheless, in reviewing such 
 a motion on appeal, this court is bound by the circuit courts factual 
 findings if any evidence supports the findings. [3]   
Regarding Alvarados contention 
 that the stop was pretextual, the trial court found that the stop was reasonable 
 and supported by probable cause and that Hines conduct was entirely appropriate 
 under the facts presented in this case.  We agree with the State that there 
 is evidence in the record to support these findings. 
 [4]   Hines testified he observed the Honda Accord only about one car length 
 behind the vehicle in front of it while traveling at about sixty miles per hour.  
 He further stated that such a following distance was grossly inadequate under 
 the standards of the National Traffic Safety Administration. 
 [5]   
We also find no merit to 
 Alvarados argument that the marijuana should have been suppressed because Hines 
 did not have a reasonable suspicion to further detain him after giving him traffic 
 violation warnings.  
In support of 
 his argument that he was unlawfully detained, Alvarado cites State v. Williams 
 [6] for the proposition that after the stop has been completed, further 
 detention is improper.  In our view, although Williams limits what a 
 police officer can do after a routine traffic stop, the case expressly allows 
 further detention for questioning after the stop is completed if the officer 
 has a reasonable suspicion of a serious crime. 
 [7] 
In this case, Hines stated 
 he smelled the air freshener and the marijuana before he issued the traffic 
 warning to Alvarado.  He further testified he became concerned that Alvarados 
 passenger might have been the subject of an outstanding warrant.  In addition, 
 as noted by the trial court, the conflicting stories that Alvarado and his passenger 
 gave to Hines constituted an additional factor that when considered with the 
 other suspicious circumstances, would lead to an articulable suspicion of criminal 
 activity.
2.  We disagree with Alvarados contention that 
 the chain of custody for the marijuana found in the car was not sufficiently 
 established to admit the drugs into evidence. [8]   
The admission of evidence is discretionary with 
 the trial judge. [9]   Proof of chain of custody need 
 not negate all possibility of tampering but must establish a complete chain 
 of evidence as far as practicable. [10]   [I]f the identity of each person in the 
 chain handling the evidence is established, and the manner of handling is reasonably 
 demonstrated, no abuse of discretion is shown in the admission, absent proof 
 of tampering, bad faith, or ill-motive. 
 [11]   Furthermore, where there is a weak link in the chain of custody, 
 as opposed to a missing link, the question is only one of credibility and not 
 admissibility. [12] 
In the present case, Hines testified that after 
 he seized the bags of marijuana, he listed them on the property report and secured 
 them with evidence tape.  Tony Vinskus, the supervisor over the property and 
 evidence section, testified that narcotics must be submitted to his division 
 in tamper-proof, sealed packaging.  Vinskus also testified that when contraband 
 is received, trained personnel witness the drop being made and the evidence 
 remains in a locked dropbox until it is processed into evidence storage.  As 
 to the one individual who handled the evidence before it was analyzed but was 
 not called as a witness at trial, Vinskus testified about that employees responsibilities 
 and the procedures she followed in carrying out her duties.  We have found no 
 evidence suggesting this individual did not follow established protocol, and 
 Alvarado does not direct our attention to anything in the record showing her 
 work on the case deviated from standard procedure. [13] 
3.  Finally, we reject Alvarados argument that he 
 should have received a directed verdict because the evidence was insufficient 
 to support a finding that he had dominion and control over the marijuana.
Any person who is knowingly in actual 
 or constructive possession of ten pounds or more of marijuana is guilty of 
 trafficking in marijuana. [14]   
 To prove constructive possession, the State must show a defendant had dominion 
 and control, over the contraband. 
 [15]   Constructive possession can be established by circumstantial as 
 well as direct evidence, and possession may be shared. 
 [16]   The knowledge element may be proved circumstantially by evidence 
 of acts, declarations, or conduct of the accused from which an inference may 
 be drawn that the accused knew of the existence of the prohibited substance. [17]   Because actual knowledge of the presence 
 of the drug is strong evidence of intent to control its disposition or use, 
 knowledge may be equated with or substituted for the intent element. 
 [18] 
In support of his argument, Alvarado emphasizes 
 that the vehicle that he was driving belonged to his brother and he had merely 
 borrowed it to give his cousin, Ricardo Gallegos, a ride.  He also notes that 
 Gallegos testified at trial that Alvarado was unaware of and had nothing to 
 do with the marijuana seized in the present case, which was found in a closed 
 container in the trunk of the car.  
We, however, hold the record has sufficient 
 evidence that would support a finding by the jury that Alvarado had at least 
 the right to exercise dominion and control over the drugs.  It is undisputed 
 that Alvarado was driving the car when it was stopped; therefore, it is reasonable 
 to infer that he had dominion and control over premises upon which the drugs 
 were found. [19]   And this is not the only evidence that supports 
 Alvarados conviction.  Alvarados behavior during the traffic stop, including 
 his refusal to make eye contact when asked if he had marijuana and the vague 
 answers he gave to questions regarding the circumstances of his journey, could 
 be considered indicative of his participation in criminal activity and of his 
 awareness that he had been caught with contraband.  He also had over $700 in 
 cash on his person when he was arrested.  Moreover, during the trial, Gallegos 
 admitted to owning only the pipe that was seized from the car, which could support 
 an inference that the scales belonged to Alvarado.  In addition, the excessive 
 amount of air freshener in the car was susceptible of the inference that the 
 occupants were attempting to mask the pungent smell of the marijuana, which, 
 despite this effort, was of such a quantity that it emanated an odor that was 
 detected almost immediately by both the arresting officer and the K-9 dog.
 AFFIRMED.
HEARN, C.J., and GOOLSBY and WILLIAMS, 
 JJ., concur.

 
 
 [1]   Hampton stated that he usually started the dog from the front of 
 the car and worked backwards.

 
 
 [2]   State v. Abdullah, 357 S.C. 344, 349-50, 592 S.E.2d 344, 
 347 (Ct. App.), cert. denied (Nov. 19, 2004).

 
 
 [3]   Id. at 349, 592 S.E.2d at 344 (emphasis added).

 
 
 [4]   See S.C. Code Ann. § 56-5-1930 (1991) (prohibiting driving 
 more closely than is reasonable); id. § 56-5-1900 (stating rules for 
 driving on roadways laned for traffic); State v. Butler, 343 S.C. 198, 
 201, 539 S.E.2d 414, 416 (Ct. App. 2000) ([T]he decision to stop an 
 automobile is reasonable where the police have probable cause to believe that 
 a traffic violation has occurred.).

 
 
 [5]   Hines also explained the in-car video that he took did not show 
 any traffic violations because he turned the tape on only after he saw the 
 initial violations.  

 
 
 [6]   351 S.C. 591, 571 S.E.2d 703 (Ct. App. 2002).

 
 
 [7]   Id. at 598, 571 S.E.2d at 707.

 
 
 [8]   We further agree with the State that any error in the admission 
 of this evidence was later cured by statements elicited by Alvarado in his 
 case-in-chief from Ricardo Gallegos, the passenger in the car, that Gallegos 
 bought a hundred pounds of marijuana and put it in the trunk of the car.

 
 
 [9]   State v. Williams, 297 S.C. 290, 293, 376 S.E.2d 773, 774 
 (1989).

 
 [10] Id.

 
 
 [11] State v. Taylor, 360 S.C. 18, 25, 598 S.E.2d 735, 738 (Ct. 
 App. 2004).

 
 
 [12] State v. Carter, 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001).  
 

 
 
 [13] We further agree with the State that there is no merit to Alvarados 
 contention that testimony from four additional individuals whose names appeared 
 on the property report was necessary.  According to Vinskus, these individuals 
 were involved in handling the evidence only after it had been analyzed.  See 
 State v. Singleton, 319 S.C. 312, 317, 460 S.E.2d 573, 576 (1995) (noting 
 that when offering fungible evidence, the State must trace possession of 
 the substance and what was done with it from the time it was taken until the 
 final analysis).

 
 
 [14] S.C. Code Ann. § 44-53-370(e)(1) (2002 & Supp. 2004).

 
 
 [15] State v. Hudson, 277 S.C. 200, 202, 284 S.E.2d 773, 774-75 
 (1981). 

 
 
 [16] Id. at 202, 284 S.E.2d at 775.

 
 
 [17] State v. Mollison, 319 S.C. 41, 45, 459 S.E.2d 88, 91 (Ct. 
 App. 1995).

 
 
 [18] State v. Kimbrell, 294 S.C. 51, 54, 362 S.E.2d 630, 631 (1987).

 
 
 [19] State v. Lane, 271 S.C. 68, 73, 245 S.E.2d 114, 117 (1978) 
 (quoting State v. Ellis, 263 S.C. 12, 23, 207 S.E.2d 408, 413 (1974)); 
 see also State v. Potts, 464 P.2d 742, 745 (Wash. Ct. App. 1969) 
 (rejecting the defendants argument that the failure of the prosecution to 
 prove he was the owner of the car in which marijuana was found was fatal to 
 the claim that he had constructive possession of the drugs and noting that 
 the defendant, as the driver and sole occupant of the car, had dominion and 
 control over the premises), cited in State v. Wise, 272 S.C. 
 384, 387, 252 S.E.2d 294, 295 (1979).