623 S.E.2d 661

**The STATE, Respondent,**

v.

**Otis James COMPTON, Appellant.**

No. 4060.

Court of Appeals of South Carolina.

Heard Nov. 11, 2005.

Decided Dec. 19, 2005.

672

674

Assistant Appellate Defender Robert M. Dudek, of Columbia and Ernest Charles Grose, Jr., of Greenwood, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Jeffrey A. Jacobs, all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

STILWELL, J.:

Otis James Compton appeals his convictions for murder, burglary in the first degree, armed robbery, possession of a firearm or knife during the commission of a violent crime, and malicious injury to real property. He contends an agreement granted him immunity from prosecution on the charges in exchange for his cooperation with a police investigation. Additionally, he raises several evidentiary and constitutional issues. We affirm.

## FACTS

In August 1999, Johnny Hanna was murdered in his home during an apparent burglary. Compton was originally questioned about the crime that same month. In November 1999, Compton pled guilty to several unrelated counts of burglary and was sentenced to a total of fifteen years imprisonment. Compton remained a person of interest in the Hanna murder.

In January 2000, Compton was placed in a holding cell along with Tracey Black after they each had pled guilty to charges unrelated to the Hanna murder. According to Black, Compton initiated a discussion regarding the Hanna murder and told Black, "he had done what he had to do." Black informed investigators of this conversation. In March 2000, Black was transferred to the same prison where Compton was housed.

He was told by investigators to "listen to Mr. Compton and see if he would talk about the case any more or what he had done or any involvement in it. They told me that I could not question the guy or pursue nothing toward him, just listen." Black was eventually placed in a cell with Compton and relayed to police several conversations in which Compton admitted taking part in the burglary and murder of Hanna.

In July 2000, Compton was in the Abbeville County Courthouse for the trial of his wife on unrelated charges. While there, he sought out Sheriff Goodwin regarding the Hanna investigation. Subsequently, Sheriff Goodwin, Lieutenant Templeton, Solicitor Townes Jones, and Compton's attorney, Joe Smithdeal, met at Smithdeal's office to talk about an agreement. The agreement at issue was labeled "Plea Agreement" and required Compton to "fully and truthfully cooperate ... in their investigation of the events involving the death of Johnny Hanna." In exchange, the State agreed "to reduce the sentences by all reasonable means on [the unrelated burglary charges] to Burglary Second Degree, Non–Violent, for Seven and One-half (7–1/2) years, to run concurrent with each other and concurrent with all other sentences now serving, within 18 months of arrest or within 2 years from the date of this agreement."

Compton subsequently admitted he was present at the time of the murder of Hanna. He told investigators that two other men took part in the crime and that he drove the getaway vehicle. Compton was indicted for the murder of Hanna, as well as other related charges. Before trial, Compton moved to quash the indictment or suppress his statements to police on the grounds that the information was provided subject to an immunity agreement between Compton and the solicitor. The motion also alleged the evidence should be suppressed because it violated Rule 410, SCRE,[1] and the investigators violated his Fifth and Sixth Amendment rights. The trial court denied the motion, finding there was no reasonable expectation of immunity, the agreement was not entered into pursuant to plea negotiations, and Compton breached the agreement by failing to pass the polygraph test.

---

1. Rule 410 generally discusses the inadmissibility of withdrawn pleas and statements made during plea negotiations.

Compton was tried for and convicted of Hanna's murder and all other related offenses. He appeals all convictions.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001). We are bound by the trial court's factual findings unless they are clearly erroneous. *See State v. Abdullah*, 357 S.C. 344, 349, 592 S.E.2d 344, 347 (Ct.App. 2004) ("On appeal from a suppression hearing, this court is bound by the circuit court's factual findings if any evidence supports the findings."). "On review, we are limited to determining whether the trial judge abused his discretion. This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829 (internal citations omitted). The admission or exclusion of evidence is left to the sound discretion of the trial court. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error, which results in prejudice to the defendant. *State v. Hamilton*, 344 S.C. 344, 353, 543 S.E.2d 586, 591 (Ct.App.2001) (overruled on other grounds by *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)).

## LAW/ANALYSIS

### I. Immunity

Compton contends his agreement to cooperate in the investigation of the murder of Hanna granted him immunity from prosecution on any related charges. We disagree.

Looking at the agreement, there is nothing to evidence an understanding between the parties that Compton could not be prosecuted for the Hanna murder. It is generally recognized that immunity agreements and plea agreements are to be construed in accordance with general contract principles. *See U.S. v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) ("In the process of determining whether disputed plea agreements

have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts."). Accordingly, this court should not read terms or conditions into the contract that the parties did not intend. *See Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003); *McPherson v. J.E. Sirrine & Co.*, 206 S.C. 183, 204, 33 S.E.2d 501, 509 (1945). The court must enforce an unambiguous contract according to its terms, regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully. *Ellis v. Taylor*, 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994). In *Harvey,* the court discussed the interpretation of immunity and plea agreements:

> Private law interpretive principles may be wholly dispositive in an appropriate case. For example, whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.

*Harvey,* at 300.

In the instant case, the agreement makes no mention of immunity from prosecution for any crime. In fact the word immunity, or any variation thereof, is nowhere to be found in the four corners of the document. "Prosecution" is mentioned only once in relation to the State's "prosecution" of Compton for perjury if he lied to investigators. The agreement is unambiguous. It clearly indicates the State's intention—to get reliable information that could assist in solving the murder case. Compton's intention is equally clear—to get a reduction in the sentences for his burglary convictions. The burglary convictions are specifically referenced by indictment numbers, and the reduction sought is set forth in specific terms. The agreement is simply a contract of cooperation between the parties. To characterize the agreement as something more would be to read into it terms that simply are not there.

Furthermore, there is no argument by Compton that the investigators overreached or coerced him into making the agreement. It was entered into after Compton initiated contact with Sheriff Goodwin in the hopes of procuring a reduction on his already imposed burglary sentence. There is no indication the agreement contemplated the granting of immunity from prosecution on charges relating to the Hanna murder in exchange for Compton's testimony. Accordingly, the trial court did not err in refusing to quash the indictments brought against Compton based upon this agreement.[2]

## II.  Rule 410, SCRE.

█ Compton contends the trial court erred in refusing to exclude his statements under Rule 410, SCRE, as the statements were made in the course of plea negotiations. We disagree.

Rule 410 provides that evidence of a guilty plea that is later withdrawn or evidence of a plea of nolo contendere is inadmissible against a defendant. Furthermore, statements made in the course of court proceedings related to such pleas are not admissible. Likewise, a statement made during plea negotiations with a prosecuting authority, even if a guilty plea is not entered or is later withdrawn, is not admissible.

The unequivocal language of Rule 410 precludes its application in the instant case. The discussions between Compton, the solicitor, and investigators were not in furtherance of Compton making a plea on any charges. The discussions came after he already pled guilty to burglary charges and before any charges were brought related to the Hanna murder. Nothing in the record indicates Compton ever offered to plead guilty or planned to plead guilty to the Hanna murder in exchange for anything from the State. The only negotiations were related to the reduction in the sentence for the burglary

---

**2.** Both parties also discuss in their briefs whether the agreement was breached and whether the State was required to honor the agreement. The issue before this court is whether the agreement granted Compton immunity from prosecution based upon his cooperation and whether the trial court erred in refusing to quash the indictments. We are therefore precluded from addressing any contention related to an alleged breach of the agreement.

charges. Accordingly, the trial court did not err in refusing to exclude the statements under Rule 410, SCRE.

## III. Promise of Leniency

Compton contends the trial court erred in failing to exclude his confessions on the grounds that they were made after a promise of leniency and were, therefore, not voluntary. We disagree.

"The test for determining the admissibility of a statement is whether it was knowingly, intelligently, and voluntarily given under the totality of the circumstances. A statement induced by a promise of leniency is involuntary only if so connected with the inducement as to be a consequence of the promise." *State v. Owens*, 346 S.C. 637, 660, 552 S.E.2d 745, 757 (2001) (overruled on other grounds by *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)) (internal citations omitted).

In this case, the record indicates Compton was never told his statements would not be used against him. Nothing brought out in the *Jackson v. Denno*[3] hearing or in the arguments to quash the indictments indicated Compton made the statements involuntarily and based upon a promise of leniency. Additionally, he sought out the sheriff in order to make a deal to reduce his burglary sentence in exchange for information about a separate matter. Accordingly, we find the trial court properly concluded the statements were given knowingly and voluntarily by Compton and were properly presented to the jury for consideration.

## IV. Right to Counsel

Compton contends the court erred in failing to suppress his statements because the State violated his Sixth Amendment right to counsel by having Tracey Black initiate contact as a government informant. We disagree.

"The Sixth Amendment right [to counsel] attaches only 'post-indictment,' at least in the questioning/statement setting." *State v. Council*, 335 S.C. 1, 15, 515 S.E.2d, 508, 515 (1999) (citing *Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct.

---

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

1176, 108 L.Ed.2d 293 (1990)). "The Sixth Amendment right does not attach simply because the defendant has been arrested or because the investigation has focused on him." *State v. Register*, 323 S.C. 471, 477, 476 S.E.2d 153, 157 (1996) (citing *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966)). Furthermore, South Carolina follows the federal constitutional rule that the Sixth Amendment right to counsel is offense-specific; the mere fact counsel is appointed in one matter does not invoke the right to counsel in another, unrelated matter. *State v. Owens*, 346 S.C. 637, 661, 552 S.E.2d 745, 758 (2001) (overruled on other grounds by *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005)).

In the instant case, Compton was not indicted for the charges related to the Hanna murder until *after* he provided information to Black. While he was represented on the unrelated burglary charges and at the making of the agreement, that fact does not give rise to a Sixth Amendment violation regarding information gathered about the Hanna murder. Accordingly, the trial court properly admitted evidence of Compton's statements at trial.

## V. Examination of Witness

█ Compton contends the trial court erred in limiting his ability to examine Solicitor Jones. We disagree.

█ "The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *State v. Graham*, 314 S.C. 383, 385, 444 S.E.2d 525, 527 (1994). "This does not mean, however, that trial courts conducting criminal trials lose their usual discretion to limit the scope of cross-examination." *State v. Aleksey*, 343 S.C. 20, 33–34, 538 S.E.2d 248, 255 (2000).

Compton's counsel sought to elicit testimony from Solicitor Jones to support the theory that the agreement called for Compton to be immune from prosecution in the Hanna murder. Counsel also sought testimony about Jones' belief that Compton's attorney would continue to be involved in the case. Such testimony was not relevant to the issue of Compton's

guilt or innocence. The jury was not entitled to determine whether the agreement provided transactional immunity, as that was a question of contract interpretation before the court. Additionally, the statement sought to be admitted to impeach the solicitor, while not relevant, was also based upon pure speculation that counsel would continue in his involvement. As such, we find no error on the part of the trial court in limiting the examination of Solicitor Jones or in refusing to allow Compton to impeach Jones using a prior statement that was purely speculative.

## CONCLUSION

We find the agreement is unambiguous and does not intend to grant immunity to Compton from prosecution on charges related to the Hanna murder. Additionally, we find the statements given by Compton were properly admitted by the trial court. We conclude there was no violation of Compton's Sixth Amendment right to counsel by placing Black in the same prison cell to act as a conduit of information. Finally, we find the limitation of Compton's examination of Solicitor Jones was proper. Accordingly, Compton's convictions and sentences are

**AFFIRMED.**

KITTREDGE and WILLIAMS, JJ., concur.