700 S.E.2d 266

**The STATE, Respondent,**

v.

**Theodore David WILLS, Jr., Appellant.**

**No. 4742.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2010.

Decided Sept. 22, 2010.

Rehearing Denied Oct. 28, 2010.

Senior Appellate Defender Joseph L. Savitz, III, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney Gen-

eral S. Creighton Waters, all of Columbia; and Solicitor J. Gregory Hembree, of Conway, for Respondent.

PER CURIAM.

Theodore David Wills, Jr. appeals his murder conviction and forty-year sentence, arguing the trial court erred in admitting his statement in violation of Rule 410, SCRE. We affirm.[1]

## FACTS

Wills was charged with murdering Julian Lee. Prior to his trial, Wills entered into a proffer agreement with the State, reviewed and signed by his attorney, whereby he agreed to truthfully divulge the events and circumstances surrounding Lee's death in exchange for the State's consideration and a recommended sentence. The agreement contained several conditions, including Wills's submission to a polygraph examination to test the veracity of his statement. Additionally, the agreement provided:

[U]pon examination(s) by polygraph, if the responses given by Theodore David Wills Jr. show deception, are inconsistent with information previously provided or indicates he is the person or one of the persons that shot the victim, the terms of this proffer are null and void and any statements made by Theodore David Wills Jr. may be used against him by the State for any legal purpose, including, but not limited to, considerations for charging, bond, disposition of charges through plea or trial of Theodore David Wills Jr. and impeachment.

After Wills gave a video-taped proffer statement, the polygraph was administered and the State determined Wills was untruthful.

At trial, Wills opposed the statement's introduction, and after a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing, the trial court found the statement was voluntary and admissible on the conditions both parties would refrain from mentioning the polygraph, and the videotape would be redacted where Wills referenced his previ-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

ous incarceration and the polygraph. Wills was convicted as charged and sentenced to forty years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

The admission of evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). An abuse of discretion occurs when the trial court's conclusions either lack evidentiary support or are controlled by an error of law. *Id.*

## LAW/ANALYSIS

"Rule 410[, SCRE,] provides ... a statement made during plea negotiations with a prosecuting authority, even if a guilty plea is not entered or is later withdrawn, is not admissible." *State v. Compton,* 366 S.C. 671, 679, 623 S.E.2d 661, 665 (Ct.App.2005).

In *Compton,* this court addressed the admissibility of a defendant's statements procured pursuant to an agreement with the State. *Id.* Otis James Compton was questioned about an unsolved murder prior to pleading guilty to unrelated counts of burglary. *Id.* at 675, 623 S.E.2d at 663. At all times, Compton remained a person of interest in the murder investigation. *Id.* While incarcerated, Compton pled to additional charges unrelated to the murder and was placed in a holding cell. *Id.* Compton initiated a conversation with his holding cellmate regarding the unsolved murder, admitting his involvement. *Id.* Approximately two months later, the cellmate was transferred to Compton's prison and asked by investigators to listen to Compton about the unsolved murder. *Id.* at 675–76, 623 S.E.2d at 663. The cellmate acquiesced and reported several conversations to investigators. *Id.* at 676, 623 S.E.2d at 663.

Eight months after his initial plea, Compton contacted investigators regarding the unsolved murder and entered into a written agreement labeled "Plea Agreement" whereby Compton agreed to fully and truthfully cooperate in the murder investigation. *Id.* at 676, 623 S.E.2d at 663–64. In exchange for his cooperation, the State agreed to reduce all

sentences Compton was serving for the unrelated burglary charges. *Id.* at 676, 623 S.E.2d at 664. As a result of his cooperation during the investigation, Compton was indicted for murder. *Id.* Pretrial, Compton moved to suppress his statements, arguing they were subject to an immunity agreement and precluded by Rule 410, SCRE. *Id.* The trial court admitted the statements after finding no reasonable expectation of immunity existed and the statements were not procured during plea negotiations. *Id.*

On appeal, this court examined the "Plea Agreement," and determined the agreement did not contain an immunity clause. *Id.* at 676–78, 623 S.E.2d at 664–65. In construing the agreement, our court stated "immunity agreements and plea agreements are to be construed in accordance with general contract principles." *Id.* at 677, 623 S.E.2d at 664. Thus, "[t]he court must enforce an unambiguous contract according to its terms, regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully." *Id.* at 678, 623 S.E.2d at 665. Likewise, this court determined the admission of Compton's statements did not offend Rule 410, SCRE. *Id.* at 679, 623 S.E.2d at 665. This court held Rule 410, SCRE, did not preclude the admission because the statements were not procured in the course of plea negotiations when the negotiation "related to the reduction in sentence for the burglary" convictions. *Id.* Specifically, our court stated the discussions "were not in furtherance of Compton making a plea on any charges." *Id.*

Applying the principles of *Compton* to the instant facts, an ambiguity in South Carolina law seems to emerge. Our case law unequivocally establishes agreements between defendants and the State should be interpreted "in accordance with general contract principles." *Id.* at 677, 623 S.E.2d at 664. However, by examining the admissibility of Compton's statements [2] under Rule 410, SCRE, our court has left the precise

---

2. Compton was also subjected to a polygraph, and the State determined he was deceitful. *Compton*, 366 S.C. at 676, 623 S.E.2d at 664. However, in his appeal, we declined to address whether Compton's breach of the agreement contributed to his statements' admissibility because the issue was not properly before this court. *Id.* at 679 n. 2, 623 S.E.2d at 665 n. 2.

question of whether an agreement can waive the application of the Rules of Evidence unanswered.

While no South Carolina case law specifically discusses whether a defendant can waive the exclusionary provisions of Rule 410, SCRE, the United States Supreme Court addressed waiver of the exclusionary provisions of Rule 410, FRE, in *United States v. Mezzanatto*, 513 U.S. 196, 200, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995).[3]  Gary Mezzanatto was arrested and charged with possession with intent to distribute methamphetamine after attempting to sell an undercover officer drugs. *Id.* at 198, 115 S.Ct. 797.  The controlled buy was arranged by an informant who was arrested a few hours before Mezzanatto for operating a methamphetamine laboratory in his residence. *Id.* at 197–98, 115 S.Ct. 797.  Pretrial, Mezzanatto and his attorney contacted the prosecutor to discuss the possibility of cooperating with the government. *Id.* at 198, 115 S.Ct. 797. The prosecutor informed Mezzanatto he was under no obligation to talk; however, the prosecutor stated Mezzanatto would have to be completely truthful if he wanted to cooperate with the government. *Id.* Additionally, Mezzanatto orally agreed, with advice of his counsel, "that any statements he made during the meeting could be used to impeach any contradictory testimony he might give at trial if the case proceeded that far." *Id.*

During the meeting, Mezzanatto attempted to minimize his involvement in distributing methamphetamine and claimed he had not visited the methamphetamine laboratory at the informant's residence for at least a week before his arrest. *Id.* at 199, 115 S.Ct. 797.  After showing Mezzanatto video surveillance of his vehicle at the methamphetamine laboratory the

---

**3.** Rule 410, SCRE, is substantially similar to Rule 410, FRE. *Compare* Rule 410, FRE, *and Mezzanatto*, 513 U.S. at 197, 115 S.Ct. 797 ("Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) provide that statements made in the course of plea discussions between a criminal defendant and a prosecutor are inadmissible against the defendant."), *with* Rule 410, SCRE, *and Compton*, 366 S.C. at 679, 623 S.E.2d at 665 ("Rule 410 provides that evidence of a guilty plea that is later withdrawn or evidence of a plea of nolo contendere is inadmissible against a defendant.  Furthermore, statements made in the course of court proceedings related to such pleas are not admissible.  Likewise, a statement made during plea negotiations with a prosecuting authority, even if a guilty plea is not entered or is later withdrawn, is not admissible.").

day before his arrest, the government terminated the meeting due to Mezzanatto's deceit. *Id.*

Accordingly, Mezzanatto was tried, and during his cross-examination, the prosecutor impeached him using the statements procured during the cooperation meeting. *Id.* Mezzanatto was ultimately convicted. *Id.* On appeal to the Ninth Circuit Court of Appeals, Mezzanatto's conviction was reversed. *Id.* The Ninth Circuit "held [Mezzanatto's] agreement to allow admission of his plea statements for purposes of impeachment was unenforceable." *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, stating: "The presumption of waivability has found specific application in the context of evidentiary rules. Absent some 'overriding procedural consideration that prevents enforcement of the contract,' courts have held that agreements to waive evidentiary rules are generally enforceable even over a party's subsequent objections." *Id.* at 202, 115 S.Ct. 797 (citation omitted). Furthermore, the Court held "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* at 210, 115 S.Ct. 797.

■ Here, the principles of *Mezzanatto* are instructive in determining whether Wills's statements were properly admitted. First, we note the proffer agreement between Wills and the State constituted a plea negotiation and triggered the exclusionary provisions of Rule 410, SCRE. Likewise, any statements procured in execution of the agreement were unequivocally in furtherance of Wills entering a plea on his pending charges. Second, construing the proffer agreement in accordance with general contract principles, regardless of the agreement's wisdom or lack thereof, the agreement unambiguously provides Wills's statement can be used against him by the State *for any legal purpose* if the State determines Wills was deceitful. Thus, we hold the proffer agreement waived the protections of Rule 410, SCRE. Next, we must determine whether an affirmative indication that Wills entered the agreement unknowingly or involuntarily exists. Because Wills entered the proffer agreement with advice of counsel, evidenced by counsel's co-signature, and the record lacks support for a finding to the contrary, we find the agreement

was knowingly and voluntarily entered. Therefore, the trial court properly admitted Wills's statements as evidence against him at trial.

Accordingly, Wills's conviction is

**AFFIRMED.**

WILLIAMS, PIEPER, and KONDUROS, JJ., concur.