495 S.E.2d 437

**STATE of South Carolina, Respondent**

v.

**Gary Reece THOMPSON, Jr., Petitioner.**

**No. 24744.**

Supreme Court of South Carolina.

Heard Nov. 4, 1997.
Decided Jan. 12, 1998.

Robert C. Childs, III, of Mitchell, Bouton, Duggan, Yokel & Childs, Greenville, for petitioner.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Columbia; and Solicitor Joseph J. Watson, Greenville, for respondent.

TOAL, Justice:

Petitioner Gary Reece Thompson, Jr. was convicted of criminal sexual conduct in the first degree and sentenced to thirty years in prison. On appeal, Thompson challenges the trial court's ruling allowing the prosecution to use, for impeachment purposes, statements Thompson made to a psychiatrist in the course of plea negotiations. In an unpublished opinion, the Court of Appeals affirmed the trial court's ruling. *State v. Thompson,* Op. No. 96–UP–132 (S.C.Ct.App. filed April 30, 1996). We reverse and remand.

### FACTUAL/PROCEDURAL BACKGROUND

Gary Reece Thompson, Jr. was indicted for criminal sexual conduct and assault with intent to commit criminal sexual

conduct with a minor in the first degree. The indictment alleged that between January 22, 1993 and May 1, 1993, Thompson committed or assaulted with the intent to commit sexual battery on a six year old female.

Prior to trial, Thompson was represented by Bill Godfrey ("Attorney"). On the advice of Attorney, Thompson retained the services of Dr. Karl Bodtorf ("Psychiatrist"). Attorney contacted the solicitor and explained that he wanted to have Psychiatrist evaluate Thompson to determine whether Thompson would be eligible for Psychiatrist's sex offender treatment program. Attorney intended to use Psychiatrist's recommendation to negotiate a plea agreement with the State. The solicitor did not object to the evaluation, but refused to commit to making any sentencing recommendation to the court. Thompson understood the purpose of the evaluation was to pursue a plea agreement with the solicitor. During the course of the psychiatric interview, Thompson made several admissions, which Psychiatrist recorded in his report. Attorney subsequently provided a copy of Psychiatrist's report to the solicitor.

At trial, the solicitor subpoenaed Psychiatrist to testify concerning Thompson's statements. Thompson objected and argued the statements were protected by the attorney-client privilege. The trial judge ruled that the prosecution could not use Psychiatrist's testimony in its case-in-chief, but could use it to impeach Thompson if he testified at trial. Thompson did not testify before the jury, but did proffer *in camera* testimony concerning his statements to Psychiatrist.

Thompson was found guilty of criminal sexual conduct in the first degree and sentenced to thirty years in prison. He appealed his conviction and sentence. Before the Court of Appeals, Thompson argued, *inter alia,* that the trial judge erred in making a preliminary ruling allowing the prosecution to use privileged information to impeach him if he testified at trial. Thompson further argued that the ruling effectively prevented him from testifying at trial. The Court of Appeals held that Thompson waived his attorney-client privilege with Psychiatrist. *State v. Thompson,* Op. No. 96–UP–132 (S.C.Ct. App. filed April 30, 1996).

We granted Thompson's petition for a writ of certiorari to consider the following issue:

Did the Court of Appeals err in finding Thompson waived his attorney-client privilege?

## LAW/ANALYSIS

### A. Attorney–Client Privilege

■ In *State v. Hitopoulus,* 279 S.C. 549, 309 S.E.2d 747 (1983), we held that the attorney-client privilege extends to communications between the client and a psychiatrist retained to aid in the preparation of a case. In *Hitopoulus,* we adopted the balancing test enunciated in *United States ex. rel. Edney v. Smith,* 425 F.Supp. 1038 (E.D.N.Y.1976). Under this test, a court, in determining whether the attorney-client privilege extends to communications between a client and a non-lawyer, must balance two factors: (1) the need of the attorney for the assistance of the non-lawyer to effectively represent his client, and (2) the increased potential for inaccuracy in the search for truth as the trier of fact is deprived of valuable witnesses. However, before reaching this test, a court must ascertain whether the communication is confidential in nature. *State v. Smith,* 286 S.C. 406, 334 S.E.2d 277 (1985).

■ The State argues that the attorney-client privilege does not extend to Thompson's communications with Psychiatrist because Thompson could not have expected the information to be confidential as it was made in contemplation of publication to the State for plea negotiations. We disagree. Psychiatrist interviewed Thompson privately, and elicited remarks in order to diagnose Thompson's mental condition. Psychiatrist's ability to make an accurate recommendation hinged on Thompson's willingness to talk freely. This sort of uninhibited dialogue is predicated on an implied promise of confidentiality. *See United States ex. rel. Edney v. Smith,* 425 F.Supp. at 1043. Without confidentiality, accurate diagnosis is compromised. *See id.* ("Confidentiality is a *sine qua non* for successful psychiatric treatment."). We therefore begin with the presumption that Thompson expected his statements to be confidential. The fact that Thompson knew Attorney intended to use Psychiatrist's recommendation to negotiate a plea

agreement with the State does not overcome this presumption. It is more reasonable that Thompson expected Attorney would make a recommendation without revealing his actual statements.

The State next argues that the attorney-client privilege does not extend to Thompson's communications because Psychiatrist was not hired by Thompson in an effort to prepare a legal defense. In support of its argument, the State cites *State v. Smith*. In *Smith*, the prosecution called the defendant's psychologist to rebut expert testimony concerning insanity. The defendant argued that the State's actions violated his attorney-client privilege. We disagreed and held that the rule in *Hitopoulus* was inapplicable because there was no evidence that the defendant's psychologist was hired to help establish the defendant's insanity defense; instead, the psychologist was employed solely to assist in jury selection.

The State interprets *Smith* and *Hitopoulus* as standing for the proposition that a communication can be privileged only if the expert is employed to aid in the preparation of a legal defense. We do not find the privilege to be this narrow. "[I]n criminal causes, communications made by a defendant to an expert in order to equip that expert with the necessary information to provide the defendant's attorney with the tools to aid him in giving his client proper legal advice are within the scope of the attorney-client privilege." *State v. Pratt*, 284 Md. 516, 398 A.2d 421, 423–24 (1979). Without Psychiatrist's recommendation, Attorney could not have effectively pursued the treatment program during plea negotiations. Thus, balancing the two factors in *Hitopoulus*, we find the attorney-client privilege extends to Thompson's communications with Psychiatrist.

## B. Waiver of Attorney–Client Privilege

Thompson argues that the Court of Appeals erred in holding that he waived his attorney-client privilege with Psychiatrist. We agree.

The attorney-client privilege belongs solely to the client and can only be waived by the client. *State v. Love*, 275 S.C. 55, 271 S.E.2d 110 (1980). "Although a client may waive his attorney-client privilege, the waiver must be distinct and

unequivocal." *State v. Hitopoulus,* 279 S.C. at 551, 309 S.E.2d at 749.

The Court of Appeals held that Thompson impliedly waived his attorney-client privilege because he should have known that it was necessary for Attorney to disclose the statements in order to effectively negotiate a plea agreement. We disagree. "[W]here an implied waiver is claimed, caution must be exercised, for waiver will not be implied from doubtful acts." 28 Am.Jur.2d *Estoppel and Waiver* § 160 (1966). As stated above, it is more reasonable that Thompson expected Attorney would make a recommendation based on Psychiatrist's report, without revealing his actual statements. There is no evidence to suggest that Thompson made a distinct and unequivocal waiver.

We find that the trial court's ruling prevented Thompson from testifying at trial and therefore, violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *See Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is REVERSED and the case REMANDED for a new trial consistent with this opinion.[1]

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

1. The analysis in this case has limited, future application since this scenario would now be governed by Rule 410(4), SCRE. Rule 410(4) provides, "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is not admissible against the defendant. Rule 410 is not controlling here because it became effective on September 3, 1995; Thompson was convicted in 1994. We note, however, that the result which would be reached under Rule 410(4) is consistent with the holding in this case.