762 S.E.2d 3

The STATE, Respondent,

v.

Theodore David WILLS, Petitioner.

Appellate Case No. 2010–178266.

No. 27416.

Supreme Court of South Carolina.

Heard Dec. 6, 2012.
Decided July 16, 2014.
Rehearing Denied Aug. 22, 2014.

Appellate Defender LaNelle Cantey DuRant, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Deputy Attorney General S. Creighton Waters, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

Justice PLEICONES.

We granted certiorari to review the decision of the Court of Appeals affirming the circuit court's decision to admit petitioner's statement made in connection with a proffer agreement. *State v. Wills*, 390 S.C. 139, 700 S.E.2d 266 (Ct.App.2010). We affirm.

The first question raised by this case is whether a criminal defendant may waive the protections afforded by Rule 410, SCRE.[1] If we decide that he may, the next issue is whether the Court of Appeals was correct in holding that petitioner did so here.[2] We answer both questions "yes."

Rule 410, SCRE, titled **"INADMISSIBILITY OF PLEAS, PLEA DISCUSSIONS, AND RELATED STATEMENTS,"** provides:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

(2) a plea of nolo contendere;

(3) any statement made in the course of any court proceedings regarding either of the foregoing pleas; or

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

---

1. Although it is questionable whether the Rule 410 issue was preserved for appellate review, it formed the basis for the Court of Appeals' decision upon which we granted certiorari, and we therefore address the merits.

2. The Court of Appeals' opinion contains a full explanation of the facts of this case, including the terms of the Proffer Agreement.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

We agree with the Court of Appeals that a criminal defendant may waive the protections afforded by Rule 410. Here, petitioner and his attorney executed an agreement wherein petitioner agreed that if a subsequent polygraph examination demonstrated deception, inconsistencies, or that petitioner shot the victim, then "the terms of this proffer are null and void **and** any statements made by [petitioner] may be used against him by the State for any legal purpose, including ... disposition of charges through plea or trial ... and impeachment." Proffer Agreement section 2 (emphasis supplied). Further, section 7 provides in relevant part not only that petitioner's violation of the Agreement would render the Proffer's terms null and void, but also that "the State shall have the right to use any information obtained through this Proffer in any fashion, whether direct [or] collateral...." Applying the rules of contract construction here, "regardless of the agreement's wisdom or lack thereof," we agree with the Court of Appeals that, on this record, petitioner's Proffer Agreement, entered with the advice and consent of counsel, waived the protections of Rule 410, SCRE.

The decision of the Court of Appeals is

**AFFIRMED.**

TOAL, C.J., KITTREDGE, J., concur.

BEATTY, J., dissenting in a separate opinion in which HEARN, J., concurs.

Justice BEATTY.

I dissent as I believe the majority reaches an incorrect result because it fails to appreciate and analyze the significant issues presented by this case. For reasons that will be discussed, I would find the trial judge erred in allowing the State to use Petitioner's statement during its case-in-chief as

it violates principles of contract law and Rule 410 of the South Carolina Rules of Evidence.[3] More importantly, a decision authorizing the State to present a false statement to the jury in order to procure a conviction should not stand as it unquestionably compromises the integrity of our system of justice. Accordingly, I would reverse the decision of the Court of Appeals and remand the matter for a new trial.

## I. Factual/Procedural History

On October 13, 2001, officers with the Horry County Police Department were called to investigate a remote location off of Highway 90 in Horry County. Upon arrival, they discovered the body of a young male who had been shot two times in the back. Law enforcement, using fingerprint evidence, later identified the victim as Julian Lee. As a result of the investigation, Petitioner was charged with accessory after the fact and obstruction of justice.

In August 2005, Detective Allen Large of the Horry County Police Department was contacted by the Fifteenth Circuit Solicitor's Office to interview Petitioner, who was incarcerated at J. Reuben Long Detention Center. In response to a plea offer from the State, Petitioner and his attorney, Bill Diggs, met with Detective Large, Detective Neil Livingston, and Assistant Solicitor Scott Hixson to discuss a proffer agreement.[4] In essence, the proffer agreement provided that in exchange for Petitioner's truthful account of the events sur-

---

**3.** Rule 410, SCRE (providing that pleas, plea discussions, and related statements are inadmissible against a defendant who made the plea or was a participant in the plea discussions, except in limited circumstances).

**4.** "A 'proffer agreement' is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a 'proffer session.'" *United States v. Lopez,* 219 F.3d 343, 345 n. 1 (4th Cir.2000). "The proffer agreement defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement." *Id.*

rounding the victim's murder the State would take into consideration his cooperation in offering a sentence recommendation.

The proffer agreement provided in relevant part:

1. Theodore David Wills Jr. shall submit himself to agent(s) of the State for the purpose of debriefing regarding this matter and all other matters materially bearing on this matter. He shall be completely truthful concerning his involvement in this matter, and completely truthful concerning the involvement of all other individuals in this matter. He shall truthfully and completely answer all questions posed by agent(s) of the State bearing materially on this matter and shall provide without prompting all information concerning this matter in a complete and truthful manner even if such information is not elicited by agent(s) of the State by direct question. Any and all information provided by Theodore David Wills Jr. under the terms of this proffer may be recorded in any fashion at the election of the State;

2. Theodore David Wills Jr. shall submit himself to a polygraph examination(s) to verify all information provided to the State at the election of the State. The polygraph examiner(s) shall be selected by the State and, for the purpose of this Proffer, are designated agent(s) of the State; upon examination(s) by polygraph, if the responses given by Theodore David Wills Jr. show deception, are inconsistent with information previously provided or indicates he is the person or one of the persons that shot the victim, the terms of this proffer are null and void and any statements made by Theodore David Wills Jr. may be used against him by the State for any legal purpose, including, but not limited to, considerations for charging, bond, disposition of charges through plea or trial of Theodore David Wills Jr. and impeachment;

. . . .

4. In return for Theodore David Wills Jr.'s full compliance with all terms stated within this Proffer, statements provided during his debriefing will not be used in a criminal prosecution currently pending against him by this Office. The State will not seek any additional charges against Theodore David Wills Jr. in connection with the subject of this Proffer;

. . . .

7. Violation of any term of this Proffer renders all terms null and void; the State shall have the right to use any information obtained through this Proffer in any fashion, whether direct [or] collateral to this matter.

Petitioner and his attorney signed the proffer agreement. Subsequently, Petitioner signed a written waiver of his *Miranda*[5] rights. Petitioner then provided a statement that was recorded in the presence of his attorney, the detectives, and the assistant solicitor. In his statement, Petitioner claimed he drove his brother Donnell Green, Mark Willard, and the victim to the remote location during the early morning hours of October 13, 2001. According to Petitioner, he and the victim believed they were going to rob some drug dealers and "score some quick cash." Petitioner stated he saw Willard shoot the victim and that he heard a second shot as he ran away.

On September 19, 2005, Petitioner submitted to a polygraph examination, which was administered by SLED Agent Ricky Charles's intern. Based on his review of the polygraph results, Agent Charles concluded that Petitioner was deceptive in his statement. Agent Charles did not specify how Wills was deceptive or whether the deception was material to the agreement. As a result, the State claimed the proffer agreement was null and void and proceeded to charge Petitioner with murder.

At the beginning of the trial, the State indicated it intended to use Petitioner's statement as part of its case-in-chief. Counsel for Petitioner objected to the admission of the statement as it was given "in exchange for participation by the State in a plea agreement process." Counsel challenged the proffer agreement as "inherently flawed" because an "unreliable" polygraph examination was used to determine Petitioner's truthfulness. Based on these circumstances, counsel asserted the statement was involuntary and should be suppressed.

In response to defense counsel's objection, the judge held a hearing pursuant to *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). After hearing arguments and

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

reviewing the recorded statement, the trial judge found the statement was given voluntarily as Petitioner was apprised of his *Miranda* rights and signed the proffer agreement. The judge, however, cautioned the parties not to make any reference to the use of a polygraph examination. The judge also permitted defense counsel to explain to the jury that Petitioner made the statement in response to the proffer agreement.

During its case-in-chief, the State played the recorded statement to the jury. At the conclusion of the State's case, defense counsel moved for a directed verdict and renewed his objection to the admissibility of the statement. The judge denied the motion and reaffirmed his previous rulings. Petitioner, who did not testify or present any evidence, was ultimately convicted of murder and sentenced to forty years' imprisonment.

On appeal, Petitioner argued the trial judge erred in allowing the jury to hear the statement as it arose out of a proffer agreement and, thus, was inadmissible under Rule 410 of the South Carolina Rules of Evidence. Because the inculpatory admissions were the "centerpiece" of the State's case, Petitioner asserted his conviction should be reversed and the case remanded for a new trial.

The Court of Appeals affirmed Petitioner's conviction and sentence. *State v. Wills*, 390 S.C. 139, 700 S.E.2d 266 (Ct. App.2010). In so ruling, the court stated that "[o]ur case law unequivocally establishes agreements between defendants and the State should be interpreted 'in accordance with general contract principles.'" *Id.* at 143, 700 S.E.2d at 268 (quoting *State v. Compton*, 366 S.C. 671, 677, 623 S.E.2d 661, 664 (Ct.App.2005)). The court noted, however, that the "question of whether an agreement can waive the application of [Rule 410] [had been] unanswered." *Id.* at 144, 700 S.E.2d at 268. In answering this question, the court relied on the United States Supreme Court's ("USSC") decision in *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), wherein the USSC held that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea statement Rules is valid and enforceable." *Id.* at 145, 700 S.E.2d at 269 (quoting *Mezzanatto*, 513 U.S. at

210, 115 S.Ct. 797). Applying *Mezzanatto*, the court concluded that the proffer agreement: (1) triggered the exclusionary provisions of Rule 410 as it constituted a plea negotiation; and (2) unambiguously provided that Petitioner's statement could be used against him by the State for any legal purpose if the State determined Petitioner was deceitful. *Id.* at 145, 700 S.E.2d at 269. Finally, the court found the judge properly admitted the statement as Petitioner knowingly and voluntarily entered into the agreement. *Id.* at 146, 700 S.E.2d at 269.

This Court granted Petitioner's request for a writ of certiorari to review the decision of the Court of Appeals.

## II. Discussion

### A. Arguments

In challenging the decision of the Court of Appeals, Petitioner asserts the facts of the instant case are distinguishable from *Compton* and *Mezzanatto* since those cases did not involve a "polygraph examiner as the decision maker on whether [Petitioner] was telling the truth." Because polygraph examinations are "inherently unreliable," Petitioner contends an arbitrary factor was injected into the agreement. In view of the polygraph provision and the vague terms of the agreement, Petitioner claims it "literally invites solicitors to find ways not to honor a plea agreement."

If the decision of the Court of Appeals is upheld, Petitioner argues the purpose and policy of Rule 410 will be undermined. Specifically, Petitioner avers that *Mezzanatto* only permitted statements made during plea negotiations to be used for impeachment purposes and "did not necessarily provide a basis for the prosecution to use those statements in its case-in-chief." Additionally, Petitioner contends he did not knowingly enter into the proffer agreement as the provision that his statement could be used for "any legal purpose" was vague.

### B. Error Preservation

As a threshold matter, the State claims any issue regarding Rule 410 is not preserved for this Court's review as defense counsel failed to cite this rule during his arguments to the trial judge. The State also asserts that the argument before this Court is a "different permutation" than the issues raised to

the Court of Appeals. The State claims appellate counsel raises a new argument that the agreement should be declared null and void because the determination of Petitioner's deception was based on an unreliable polygraph examination.

In my view, the issue regarding Rule 410 was properly preserved for this Court's review. Although defense counsel did not cite Rule 410 in his trial arguments, he was aware of its provisions as he emphasized that Petitioner's statement was given during the course of plea negotiations and was inadmissible except for the limited purpose of impeachment. Moreover, the judge clearly understood counsel's argument as he framed the issue as follows: "[T]he real purpose of this motion hearing is to determine whether or not the statement of [Petitioner] which he gave pursuant to this proffer can be used in the course of this trial." Based on the trial arguments, appellate counsel then specifically challenged the trial judge's ruling as erroneous under Rule 410.

Because the substance of Rule 410 was raised to and ruled upon by the trial judge and the Court of Appeals, I address the merits of this issue as it was properly preserved for this Court's review. *See State v. Oglesby*, 384 S.C. 289, 293, 681 S.E.2d 620, 622 (Ct.App.2009) (finding issue regarding Rule 106, SCRE was preserved for appellate review even though defendant failed to specifically cite the rule); *see also State v. Jennings*, 394 S.C. 473, 481, 716 S.E.2d 91, 95 (2011) (recognizing that for an issue to be properly preserved it has to be raised to and ruled on by the trial court).

## C.  Analysis

Having found the issue properly preserved, I believe the Court must answer the ultimate question of whether a defendant may execute a total waiver of the exclusionary provisions of Rule 410.  In answering this question, the analysis involves a series of sequential questions.  Initially, it is necessary to determine whether a defendant may waive the exclusionary provisions of Rule 410 via a *Miranda* waiver.  If a *Miranda* waiver is not sufficient, then the focus turns to the terms of the proffer agreement.  Using principles of contract law as a guide, it is necessary to consider the effect of a breach of the proffer agreement and decide the resultant remedy, i.e., the

extent to which the State may utilize statements made by a defendant pursuant to a proffer agreement.

The analysis of each of these questions is premised on this Court's commitment to protect and preserve the integrity of the judicial process. It stands to reason that the integrity of the judicial process is challenged when the State is allowed to introduce a statement that the State has declared false and deceitful yet, at the same time, insists that the judge and jury accept the statement as truthful. This Court must determine to what extent such a statement may be used without assaulting the integrity of the judicial process.

Cognizant of this Court's duty to ensure the legitimacy of this process, I now assess whether the proceedings in the instant case undermined the purpose for and the protections afforded by Rule 410 and, in turn, Petitioner's right to a fair trial.

### (1)

Statements given during plea negotiations are generally inadmissible as they are protected by Rule 410, which provides:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

(2) a plea of nolo contendere;

(3) any statement made in the course of any court proceedings regarding either of the foregoing pleas; or

(4) **any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.**

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false

statement if the statement was made by the defendant under oath, on the record and in the presence of counsel. Rule 410, SCRE (emphasis added).[6]

In reviewing the legislative history of Rule 410, it is clear Congress recognized that statements made during the course of plea negotiations are decidedly different than other voluntary statements and, thus, sought to limit their admissibility. *See* Advisory Committee Notes to Rule 410, FRE ("As with compromise offers generally ... free communication is needed, and security against having an offer of compromise or related statement admitted in evidence effectively encourages it."); Paul F. Rothstein, *Federal Rules of Evidence Rule 410* (3d ed.2012) (discussing legislative history of Rule 410 and stating, "The rule has a number of purposes, the most significant of which is to encourage the early disposition of criminal cases without the cost, expense, and uncertainty of trial. It protects the accused from being placed in the untenable position of having a right to withdraw a guilty plea but being forced to take the stand in order to explain that decision at trial." (footnote omitted)). Were there not this distinction, it would have been unnecessary for Congress to promulgate a rule to protect statements made during plea negotiations.

In examining this distinction, the Fifth Circuit Court of Appeals explained that "[p]lea negotiations are inadmissible, but surely not every discussion between an accused and agents for the government is a plea negotiation." *United States v. Robertson*, 582 F.2d 1356, 1365 (5th Cir.1978). "Suppressing evidence of such negotiations serves the policy of insuring a free dialogue only when the accused and the government actually engage in plea negotiations: 'discussions in advance of the time for pleading with a view to an agreement whereby the defendant will enter a plea in the hope of receiving certain charge or sentence concessions.' " *Id.* (quoting ABA Standards, Introduction at 3). The court noted that "plea negotiations contemplate a bargaining process, a 'mutuality of advantage,' and a mutuality of disadvantage. That is,

---

**6.** Rule 410 is the substantive equivalent of the federal rule. *See* Notes to Rule 410, SCRE ("Except for subsection (3), this rule is identical to the federal rule. Subsection (3) was amended because South Carolina has no equivalent to Rule 11 of the Federal Rules of Criminal Procedure.").

the government and the accused both seek a concession for a concession, a Quid pro quo. The accused contemplates entering a plea to obtain a concession from the government. The government contemplates making some concession to obtain the accused's plea." *Id.* at 1365–66 (citations omitted). Thus, in assessing the admissibility of a defendant's statement, it is necessary to "distinguish between those discussions in which the accused was merely making an admission and those discussions in which the accused was seeking to negotiate a plea agreement." *Id.* at 1367.

The Tennessee Court of Criminal Appeals cited the reasoning in *Robertson* to specifically differentiate between statements that are made during plea negotiations and those that are made following a *Miranda* waiver. *State v. Hinton*, 42 S.W.3d 113, 122 (Tenn.Crim.App.2001). In *Hinton*, the defendant was convicted of first-degree felony murder, attempted first-degree murder, and especially aggravated robbery. *Id.* at 116. On appeal, the defendant raised several issues, including that the trial judge erred in denying his motion to suppress an inculpatory statement that he made during plea negotiations. *Id.* at 119–26.

Initially, the court found the statement was made during the course of plea discussions with an attorney for the prosecuting authority and, thus, Rule 410 protections were implicated. *Id.* at 119–23. Because the defendant gave the statement after being advised of his *Miranda* rights, the court considered whether the statement, which fell within the purview of the rules, was nevertheless admissible. *Id.* at 123. The court found the statement was inadmissible as "the administration of *Miranda* warnings is insufficient to inform the defendant of his rights pursuant to Rules 410 and 11(e)(6)." *Id.* at 126. In reaching this conclusion, the court stated:

> We do not believe that *Miranda* warnings, which do not mention the rights provided by Rules 410 and 11(e)(6), can make a defendant aware of the nature of those rights. **Furthermore, the purposes and protections of** *Miranda* **are substantially different from the purposes and protections of Rules 410 and 11(e)(6).** The purpose of *Miranda* **warnings is to secure the privilege against self-incrimination, ensuring that confessions are voluntary and intelligent.** *See State v. Stephenson*, 878 S.W.2d 530 [ (Tenn.

1994), *overruled on other grounds by, State v. Saylor,* 117 S.W.3d 239 (Tenn.2003) ]. **The purpose of the protections of Rules 410 and 11(e)(6), on the other hand, is to foster frank and open discussions that lead to plea agreements.** *See* Cohen, et al., § 410.1 at 224 ("Rule 410 . . . is designed to encourage out-of-court settlements by reducing the possible adverse consequences of participating in negotiations."). Perhaps if the rights protected by and the purposes of *Miranda* and the plea-statement rules were the same, such that an explanation of one right would serve to explain the nature of the other, a warning and waiver of one would serve as a warning and waiver of the other. However, such is not the case.

We hold that the administration of *Miranda* warnings is insufficient to inform the defendant of his rights pursuant to Rules 410 and 11(e)(6). Because the defendant in the present case was given *Miranda* warnings and nothing more, the record affirmatively indicates that the defendant did not knowingly waive his rights pursuant to the plea-statement rules.

*Id.* at 126 (emphasis added).

Based on this reasoning, the court determined that "the defendant did not knowingly waive the specific rights afforded by Rule 410 and 1 1(e)(6)." *Id.* at 124. The court further found the erroneous admission of the statement could not be deemed harmless as "[t]he crux of the state's case consisted of the defendant's statement." *Id.* at 126.

I find the reasoning of *Hinton* persuasive. Applying the foregoing to the facts of the instant case, I believe the trial judge reached his decision under the mistaken belief that the *Miranda* waiver was sufficient to automatically deem Petitioner's statement admissible. This was error as the judge gave no consideration to Rule 410. Because *Miranda* warnings and Rule 410 protections serve distinctly different purposes, Petitioner's *Miranda* waiver did not render a presumptively inadmissible plea statement admissible for the State's use in its case-in-chief. *See Roberts v. Commonwealth,* 896 S.W.2d 4 (Ky.1995) (finding that statement made by defendant to police officer during plea discussions was not involuntary where defendant was given *Miranda* warnings, had executed a waiv-

er form prior to giving the statement, and there was no evidence that defendant was coerced or threatened; concluding that Commonwealth could not, however, use the defendant's statement against him on retrial as the statement was made in the course of plea discussions and was protected by Rule 410); *Barnett v. State*, 725 So.2d 797, 800–01 (Miss.1998) (finding Rule 410 prohibited the admission of a statement at trial where defendant gave the statement, after receiving *Miranda* warnings, in conjunction with plea negotiations).

### (2)

Because Petitioner's *Miranda* waiver did not negate the protections of Rule 410, I direct my attention to the terms of the proffer agreement. It is generally recognized that proffer agreements are to be construed in accordance with principles of contract law. *State v. Compton*, 366 S.C. 671, 623 S.E.2d 661 (Ct.App.2005). However, "[a] plea agreement is not simply a contract between two parties; rather, it implicates the integrity of the criminal justice system and requires courts to exercise judicial authority in considering the agreement." 9 Fed. Proc., L.Ed., *Fulfillment of Plea Agreement–Interpretation of the Agreement*, § 22:960 (Supp.2013). "As such, the application of contract principles to the interpretation of a plea agreement is tempered by constitutional implications." *Id.* Specifically, proffer agreements, like plea agreements "are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Parra*, 302 F.Supp.2d 226, 236 (S.D.N.Y.2004) (citations omitted).

Accordingly, "[o]ne tenet of contract law [that courts] *have* steadfastly applied to plea agreements ... is that of *contra proferentem*, the principle that ambiguities in contracts 'are to be construed unfavorably to the drafter.'" *United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir.2006) (quoting *Black's Law Dictionary* 328 (7th ed.1999)). "In context of plea agreements, the government is usually the drafter and must ordinarily bear the responsibility for any lack of clarity." *Id.* (citation omitted). Moreover, "[a]s a defendant's liberty is at stake, the government is ordinarily held to the literal terms of the plea agreement it made so that the government gets

what it bargains for but nothing more." *Id.* (citations omitted).

Thus, under the above-outlined principles of contract law, I would find the plain terms of the proffer agreement precluded the State from introducing Petitioner's statement during its case-in-chief. As drafted by the State, section 7 of the proffer agreement states that "[v]iolation of any term of this Proffer renders **all terms null and void.**" (Emphasis added.) Accordingly, by claiming that Petitioner violated the agreement, the State nullified the entire agreement, including the waiver provision. In essence, the State rescinded the agreement and avoided its contractual obligations by merely alleging Petitioner's statement was deceptive and nothing more. This rescission rendered Petitioner's statements inadmissible per se.[7]

I find support for this decision in the factually similar case of *State v. Pitt*, 390 Md. 697, 891 A.2d 312 (2006), wherein the Court of Appeals of Maryland analyzed "the proper balance when the defendant breaches the plea agreement and the State, in response, rescinds the agreement." *Id.* at 316. In *Pitt*, the defendant was arrested on a burglary charge. *Id.* Because the defendant expressed interest in "cutting a deal," the State drafted a plea agreement. *Id.* After waiving his *Miranda* rights, the defendant signed the agreement. *Id.* Under the agreement, the defendant committed "fully and truthfully [to] disclose to the State any and all knowledge and information he may have concerning the investigation" of the burglary. *Id.* In return for the defendant's complete and truthful cooperation, the State agreed to *nol pros* all charges against the defendant arising from the investigation. *Id.* The agreement also specifically provided that, in the event of the defendant's breach, by knowingly withholding evidence from the State or by being less than completely truthful, the State could "prosecute [the defendant] for any offenses in which the State agreed not to prosecute in exchange for cooperation by [the defendant] with the investigation." *Id.* It also permitted the State to "use against [the defendant] in all prosecutions the information and documents that he ha[d] disclosed to the

---

7. In my view, an attorney who allows a client to enter into this type of agreement may be at risk for an allegation of ineffective assistance of counsel.

State during the course of his cooperation." *Id.* The plea agreement also contained a provision that the defendant submit to a polygraph examination. *Id.* at 317 n. 4.

When the lead investigator became concerned that the defendant had not been forthcoming with all information, he confronted the defendant and requested that he submit to a polygraph examination. *Id.* at 317. The defendant immediately acknowledged that he had not disclosed everything and admitted to committing the burglary with an accomplice, but still wanted the State to honor the plea deal. *Id.* As a result, the State considered the defendant's contract "null and void due to him not completely disclosing the information." *Id.* All of the defendant's statements to the police with respect to the burglary investigation were admitted at his trial. *Id.* After he was convicted of first-degree burglary, the defendant appealed his conviction. *Id.*

The Maryland Court of Special Appeals reversed. *Id.* The court concluded that, "although inducements in the context of plea agreements are proper, 'when the State rescinded the plea agreement, statements obtained under it immediately lost their voluntary status and became inadmissible at trial.' " *Id.* at 317 (quoting *Pitt v. State*, 152 Md.App. 442, 832 A.2d 267, 277 (2003)). The State petitioned the Court of Appeals of Maryland for a writ of certiorari to review the decision. *Id.* The court granted the writ of certiorari to address "the admissibility of statements made during plea negotiations when the plea agreement contains a provision making such statements admissible at trial in the event of breach." *Id.*

Ultimately, the court of appeals affirmed the decision of the intermediate appellate court. *Id.* In so ruling, the court recognized that "when the State rescinds a plea agreement for any reason, the obtained statements are rendered inadmissible *per se.*" *Id.* at 322. Expanding on the holdings of its prior decisions, the court stated:

The *reason* for the State's repudiation of the agreement is immaterial with respect to the admissibility of the statement. Whether its reason be sound or unsound, technical or substantial, in good faith or simply because the prosecutor had misgivings or a change of heart, or was utterly arbitrary, is of no matter. The justification *vel non* of the

rescission, repudiation, or breach of the agreement by the State goes to whether the defendant is entitled to have the agreement enforced; it does not affect the admissibility of the statement obtained under it.

*Id.* at 322 (quoting *Allgood v. State,* 309 Md. 58, 522 A.2d 917, 927 (1987) and citing *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986)). The court noted that this holding was "to ensure that neither the defendant nor the State benefits from breaching the plea agreement." *Id.* at 325, 515 A.2d 1157.

I am persuaded by this reasoning as it comports with the applicable principles of contract law and properly preserves the protections of Rule 410. Here, the State rescinded the proffer agreement based on its assessment that Petitioner breached the agreement by purportedly failing the polygraph examination. Thus, by their actions, the parties were returned to the position as if there were no proffer agreement. *See* 17A Am.Jur.2d *Contracts* § 584 (2004) ("Rescission voids the contract ab initio, meaning that it is considered null from the beginning and treated as if it does not exist for any purpose. . . . The effect of rescission of an agreement is to put the parties back in the same position they were in prior to the execution of the contract."). In the absence of a proffer agreement, Petitioner's statements were deemed inadmissible for any purpose under Rule 410. Accordingly, I would find the Court of Appeals erred in affirming the decision of the trial judge.

In view of this decision, the State would be prohibited from introducing Petitioner's statements in the event of a retrial.[8] Because this decision is dispositive, I need not address Petitioner's remaining arguments. However, in order to provide guidance in future cases, I use the instant case as an opportunity to analyze the effect of a valid Rule 410 waiver.

### (3)

Alternatively, even if the terms of the proffer agreement did not render it "null and void" and there was no rescission on the part of the State, I would find that Petitioner's breach

---

8. The State, however, is not without some benefit as these statements were inevitably used for informational purposes in the murder investigation and initiating charges against Petitioner.

would not have automatically waived the protections of Rule 410. *See* Christopher B. Mueller and Laird C. Kirkpatrick, 2 *Federal Evidence* § 4:67 (3d. ed. 2012) ("In this situation, it is not the agreement that confers the right to exclude, but Fed.R.Evid. 410, and breaching the agreement does not end the protection accorded by the Rule.").

Instead, it is necessary to consider the effect of a breach and decide the resultant remedy, i.e., the extent to which the State may utilize statements made by a defendant pursuant to a proffer agreement. In doing so, it is necessary to assess the terms of Rule 410 as interpreted by the U.S. SC in the seminal case of *United States v. Mezzanatto*, 513 U.S. 196, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995).[9] In *Mezzanatto*, the USSC held that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* at 211, 115 S.Ct. 797. The Court, however, only considered the enforceability of such waivers for impeachment purposes.

Justice Thomas, writing the plurality opinion, premised his analysis on the fact that a criminal defendant may waive many rights, including constitutional rights, by voluntary agreement. *Id.* at 201, 115 S.Ct. 797. As a result, the Court concluded that "[b]ecause the plea-statement Rules were enacted against a background presumption that legal rights generally, and evidentiary provisions specifically, are subject to waiver by voluntary agreement of the parties, we will not interpret Congress' silence as an implicit rejection of waivability." *Id.* at 203–04, 115 S.Ct. 797. The Court further found the defendant "bears the responsibility of identifying some affirmative basis for concluding that the plea-statement Rules depart from the presumption of waivability." *Id.* at 204, 115 S.Ct. 797.

Justice Ginsburg concurred in a separate opinion, which was joined by Justices O'Connor and Breyer, wherein she expressed concern regarding a waiver that would allow the Government to use the defendant's statements in its case-in-

---

9. Although Federal Rule of Evidence 410 and our Rule 410 are substantially similar, I look to federal interpretations merely for guidance as this Court is not bound by the USSC's interpretation of the federal rule when we are called upon to interpret our state evidentiary rules.

chief as this "would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining." *Id.* at 211, 115 S.Ct. 797. Because the Government did not seek such a waiver in Mezzanatto's case, she found the Court did not need to "explore" this question. *Id.*

Justice Souter dissented in a separate opinion, which was joined by Justice Stevens. *Id.* at 211–18, 115 S.Ct. 797. The dissent rejected the plurality's holding as there was no consideration given to Congress' intent to preclude waiver. *Id.* at 212–16, 115 S.Ct. 797. The dissent also identified two potential consequences of the majority's decision. *Id.* at 216, 115 S.Ct. 797. First, the dissent noted that "defendants are generally in no position to challenge demands for these waivers, and the use of waiver provisions as contracts of adhesion has become accepted practice." *Id.* at 216, 115 S.Ct. 797. Second, the dissent believed the plurality's decision would inevitably lead to "the practical certainty that the waiver demanded will in time come to function as a waiver of trial itself." *Id.* at 217, 115 S.Ct. 797. The dissent explained that "[i]f objection can be waived for impeachment use, it can be waived for use as affirmative evidence, and if the Government can effectively demand waiver in the former instance, there is no reason to believe it will not do so just as successfully in the latter." *Id.*

Thus, the majority of the Court opposed the Government's use of a defendant's statement as affirmative evidence in its case-in-chief.

### (4)

Because *Mezzanatto* only addressed whether a defendant's waiver of the exclusionary provisions of Rule 410 authorized the prosecution to use the defendant's statement for impeachment purposes, it is necessary to determine whether the reasoning in *Mezzanatto* should be extended to permit the use of the statement during the prosecution's case-in-chief.

Although our appellate courts have referenced Rule 410, they have not addressed *Mezzanatto* or considered a defendant's written waiver of the protections of Rule 410. However, to a limited extent, these decisions express this Court's inclination to prohibit the use of a defendant's statements

made during the course of plea negotiations. For example, in *State v. Thompson,* 329 S.C. 72, 495 S.E.2d 437 (1998), this Court held that the State should not have been permitted to impeach the defendant with privileged information, which was revealed by the defendant during a psychiatric evaluation and disclosed by the defense attorney to the State during plea negotiations. In so ruling, we found the attorney-client privilege, which was not waived by the defendant, extended to his communications with the psychiatrist. *Id.* at 76, 495 S.E.2d at 439. We noted that this analysis had "limited, future application" as scenarios such as the one presented would be governed by Rule 410(4), which provides that a statement made during plea discussions is "not admissible against the defendant." *Id.* at 77 n. 1, 495 S.E.2d at 440 n. 1. We clarified, however, that "result which would be reached under Rule 410(4) is consistent with the holding in this case." *Id.* Even though *Thompson* is instructive, it is not dispositive of the instant case as *Thompson* did not involve a waiver.

Given the absence of definitive case law in our state and federal jurisdiction, I have looked to other federal jurisdictions for guidance. These courts have identified three levels of waiver: (1) impeachment, (2) rebuttal, and (3) case-in-chief. David P. Leonard, *The New Wigmore: A Treatise on Evidence: Selected Rules of Limited Admissibility* § 5.11 (Supp. 2013).

Some legal scholars have expressed concern over extending the holding in *Mezzanatto* to permit use of a defendant's proffer statements in the Government's case-in-chief. *See* 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5350 (West Supp.2012) ("Federal prosecutors have exercised the powers granted by *Mezzanatto* to impose procedures far different than those presupposed by the drafters of Rule 410."). They have emphasized that an overreaching extension of *Mezzanatto* constitutes a waiver of a defendant's constitutionally protected rights as "the only defense arguments the defendant can make, without opening the door to the incriminating plea statements, consist of (1) arguing sufficiency of the evidence, (2) impeaching government witnesses, and (3) making general statements as to the defendant's innocence." Adam Robison, Comment, *Waiver of Plea Agreement Statements: A Glimmer*

*of Hope to Limit Plea Statement Usage to Impeachment,* 46
S. Tex. L.Rev. 661, 677 (Spring 2005).

One scholar has identified three consequences of finding
that a defendant may execute a total waiver of Rule 410,
stating:

The consequences of finding that Rule 410 is a waivable
right are also problematic. First, an exception to the Rule
to allow use of otherwise inadmissible statements will even-
tually swallow the Rule, completely undermining the pur-
pose of enacting the Rule in the first place. Congress
would not have enacted Rule 410 if it intended the Rule to
be circumvented so easily and frequently that circumvention
became the norm, rather than the exception. A second
problematic consequence is that the case-in-chief waiver
essentially serves as a waiver of the right to trial. When a
defendant decides to engage in plea discussions that ulti-
mately fail, the use of his statements at trial in the prosecu-
tion's case-in-chief eliminates the need for the prosecution to
bring any other evidence to trial because his statements
serve as his confession to the crime. Therefore, a case-in-
chief waiver becomes a waiver of trial.

By extension, a third consequence arises. A case-in-chief
waiver also amounts to a waiver of the defendant's Fifth
Amendment rights. The Fifth Amendment guarantees to
every citizen the right against forced self-incrimination in
criminal trials. Under the Fifth Amendment, a defendant
shall not be forced to produce evidence against himself.
One purpose of the Fifth Amendment is to preserve the
integrity of the judicial system by requiring the prosecution
to shoulder the entire burden of proof. Because the prose-
cution must prove every element of the offense, the Fifth
Amendment protects the defendant from forcibly helping
the prosecution convict him. If a defendant chooses not to
testify at his own trial, but he has signed a Rule 410 waiver
allowing the prosecution to introduce his incriminating
statements made during plea negotiations in its case-in-
chief, the defendant's right to choose not to testify and
incriminate himself has been breached.

Julia A. Keck, *United States v. Sylvester: The Expansion of
the Waiver of Federal Rule of Evidence 410 to Allow Case–in–*

*Chief Use of Plea Negotiation Statements,* 84 Tul. L.Rev. 1385, 1399 (May 2010) (footnotes omitted).

I am persuaded by these authorities and, thus, conclude that the reasoning in *Mezzanatto* should not be extended to permit a case-in-chief waiver. I believe a decision to limit the prosecution's use of a defendant's statements to impeachment effectuates the purpose and protections of Rule 410. Moreover, such a decision is consistent with this Court's opinion in *Thompson,* wherein we held that the State should not have been permitted to impeach the defendant with privileged information, which was disclosed by the defense attorney to the State during plea negotiations.

As evidenced by the facts of the instant case, the fears of the dissent in *Mezzanatto* have become a reality. Specifically, the State's case against Petitioner was based entirely on his statement and, thus, the waiver "function[ed] as a waiver of trial itself." *Mezzanatto,* 513 U.S. at 217, 115 S.Ct. 797 (Souter, J., dissenting).

### (5)

Finally, I take this opportunity to express my concern regarding the State's use of a polygraph examination to conclusively determine Petitioner's truthfulness and, in turn, declare the agreement null and void. Because our appellate courts have repeatedly recognized the unreliability of these tests,[10] I believe it was inherently unfair for the State to use subjective results to procure the only substantive evidence against Petitioner. *See People v. Garcia,* 169 P.3d 223, 228 (Colo.Ct.App.2007) (concluding defendant's statements, which were made during a polygraph examination as part of plea negotiations, were inadmissible as substantive evidence of guilt under Rule 410; stating, "To penalize defendant for cooperating with the prosecution's request by introducing his statements as substantive proof of guilt is palpably unfair and undermines the public policy of encouraging fair compro-

---

10. *See Lorenzen v. State,* 376 S.C. 521, 533, 657 S.E.2d 771, 778 (2008) ("Although this Court in *[State v.] Council* [335 S.C. 1, 24, 515 S.E.2d 508, 520 (1999)] declined to recognize a *per se* rule against the admission of polygraph evidence, it indicated that the 'admissibility of this type of scientific evidence should be analyzed under Rules 702 and 403, SCRE and the *Jones* factors.' ").

mises."). Moreover, to allow the prosecution to declare the agreement null and void for reason of deception and then not require the prosecution to identify the deception and its materiality to the agreement is fundamentally unfair and violates the general principles of contract law.

Furthermore, even if Petitioner agreed to the State's use of a polygraph to determine truthfulness, I cannot condone the admission of a statement in the State's case-in-chief that has been deemed false. By concluding that Petitioner was being deceptive in his answers, the State found Petitioner's statement to be false. Yet, the State presented this statement to the jury with the intention that the jurors believe it as truthful. The State relied on this false statement as the primary basis to procure a conviction. In essence, the State's action suborns perjury. Because this Court is called upon to uphold the integrity of this state's legal system, I would decline to permit such an affront to the integrity of the judicial process. *See Riddle v. Ozmint,* 369 S.C. 39, 48, 631 S.E.2d 70, 75 (2006) ("A 'prosecutor's deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.' " (*quoting Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972))).

## III. Conclusion

Based on the foregoing, I would hold the Court of Appeals erred in affirming the trial judge's decision to permit the State to use Petitioner's plea statements during its case-in-chief. Initially, I would find Petitioner's *Miranda* waiver did not operate to waive the protections of Rule 410. Instead, the admissibility of the statements was dependent upon the terms of the proffer agreement. Utilizing the principles of contract law, I believe the agreement was nullified in its entirety when the State found that Petitioner breached the agreement. Because the State rescinded the agreement, it was void *ab initio* and the parties were returned to their original positions. Thus, Petitioner's plea statements were deemed inadmissible pursuant to Rule 410.

As to future cases, I would find that a breach of a proffer agreement on the part of the defendant permits the State to use a defendant's plea statements only for purposes of im-

peachment. I believe such a decision preserves the protections of Rule 410 and effectively maintains the integrity of the judicial process. Finally, I would caution the State against rescinding an agreement on the sole basis of a failed polygraph examination as these tests are inherently unreliable. Given the lack of reliability, I believe it is patently unfair for the State to use these subjective results as the sole basis for asserting that the defendant was untruthful and, thus, breached a proffer agreement. The inequity is amplified when the State is allowed to use the same statement in its case against the defendant.

I am deeply trouble by the majority's haste to lend the Court's imprimatur to the knowing misleading of the jury by the use of acknowledged false testimony. No interpretation of contract law should suborn perjury. Even if we assume the defendant's statement was false, what rule of law allows a court to ignore the primary role of the prosecutor and the jury to seek the truth?

Based on the foregoing, I would reverse Petitioner's conviction and remand the matter for a new trial.

HEARN, J., concurs.