# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Theodore Wills, Jr., Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2018-000054

---

## ON WRIT OF CERTIORARI

---

Appeal From Horry County
William H. Seals, Jr., Circuit Court Judge

---

Opinion No. 5926
Heard March 9, 2022 – Filed July 20, 2022

---

## AFFIRMED

---

William G. Yarborough, III and Lauren C. Hobbis, both
of William G. Yarborough, III, Attorney at Law, LLC, of
Greenville, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Chelsey Faith Marto, both of
Columbia, for Respondent.

---

**KONDUROS, J.:** In this action for post-conviction relief (PCR), Theodore Wills,
Jr. (Petitioner) argues the PCR court erred in concluding he did not receive
ineffective assistance of counsel. Petitioner asserts trial counsel's performance was

deficient because his advice to enter into a proffer agreement was based on an erroneous and unreasonable interpretation of the agreement. We affirm.

## FACTS

On October 13, 2001, the Horry County Police Department arrived in a remote part of the county and found a deceased young male lying face down in a vacant lot. Law enforcement identified the victim as Julian Lee and determined he had been shot in the back twice. On November 1, 2001, officers arrested Petitioner on charges of accessory to murder after the fact and obstruction of justice in connection with Lee's death.

On August 25, 2005, the State offered a proffer agreement[1] to trial counsel. Under the agreement, Petitioner would provide a statement regarding his knowledge of Lee's murder and help the State prosecute the other individuals involved. In return, the State would consider his cooperation in the disposition of his pending charges[2] and would not seek any additional charges against him in connection with Lee's murder. Additionally, the State would not use Petitioner's proffer session statement against him if he fully complied with the terms of the proffer agreement.

As part of the proffer agreement, Petitioner had to submit to a polygraph examination. If the results of the polygraph examination indicated that Petitioner had been deceptive or that he shot Lee, the terms of the proffer agreement would be "null and void" and the State could use Petitioner's proffer session statement "for any legal purpose, including, but not limited to, considerations for charging, bond, disposition of charges through plea or trial[,] . . . and impeachment." The

---

[1] "A 'proffer agreement' is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a 'proffer session.'" *State v. Wills*, 409 S.C. 183, 186 n.4, 762 S.E.2d 3, 4 n.4 (2014) (Beatty, J., dissenting) (quoting *United States v. Lopez*, 219 F.3d 343, 345 n.1 (4th Circ. 2000)). The direct appeal of Petitioner's conviction, quoted here, was a 3-2 decision by our supreme court affirming the use of Petitioner's proffer session statement in the State's case-in-chief. *Id.* at 185, 762 S.E.2d at 4. Now Chief Justice Beatty authored a dissenting opinion in which he stated he "would find that a breach of a proffer agreement on the part of the defendant permits the State to use a defendant's plea statements only for purposes of impeachment." *Id.* at 205, 762 S.E.2d at 15 (Beatty, J., dissenting).
[2] Petitioner remained incarcerated while his charges were pending.

proffer agreement designated the State as the only party that would determine if Petitioner's proffer session statement contained any inconsistency or deception.

Petitioner and trial counsel signed the proffer agreement on August 26, 2005, and Petitioner provided a statement later that day in the presence of trial counsel. In the video-recorded statement, Petitioner claimed he drove Donnell Green, Mark Willard, and Lee to the murder scene during the early morning hours of October 13, 2001. Petitioner alleged he and Lee believed the plan was to rob some drug dealers and "score some quick cash." Petitioner claimed he saw Willard shoot Lee and heard a second shot while running away.

When the solicitor asked Petitioner if he knew why Willard shot Lee, trial counsel asked to confer with Petitioner in private. After the proffer session resumed, Petitioner continued to deny shooting Lee but revealed he knew some drug dealers had placed a bounty on Lee for stealing money from them. Petitioner admitted that he had talked with the drug dealers about the bounty and that he had told Willard about the bounty before October 13, 2001. Petitioner also admitted he knew Willard planned to kill Lee but claimed he did not know when Willard would do it. Petitioner divulged that he and Willard each collected a bounty of $5,000 for Lee's death, and Green had thrown the gun used to kill Lee into the intercoastal waterway.

On September 19, 2005, Petitioner submitted to a polygraph examination. An intern at the State Law Enforcement Division (SLED) administered the examination, and a SLED agent reviewed the results. The SLED agent determined that Petitioner had been deceptive when he (1) denied he lied when he stated Willard shot Lee and (2) denied he shot Lee. Based on the SLED agent's assessment, the State claimed the proffer agreement was null and void, and a grand jury indicted Petitioner for Lee's murder.

At trial, the State disclosed it intended to use Petitioner's proffer session statement as part of its case-in-chief. Trial counsel objected to the admission of the statement and noted Petitioner gave it as part of a plea agreement. Trial counsel also asserted the proffer agreement was inherently flawed because Petitioner's truthfulness was determined by an unreliable polygraph examination.

In response to the objection, the trial court held a hearing pursuant to *Jackson v. Denno*.[3] Afterwards, the trial court ruled the State could show the recording of

---

[3] 378 U.S. 368 (1964).

Petitioner's proffer session to the jury but prohibited both sides from making any reference to the polygraph examination. Over Petitioner's objection, the trial court allowed the jury to view the entire proffer session during the State's case-in-chief. The State did not present any other evidence that tied Petitioner to Lee or corroborated Petitioner's proffer session statement.

The jury found Petitioner guilty as charged, and the trial court denied Petitioner's motion for a new trial. Petitioner appealed and argued the trial court erred in allowing the State to use his proffer session statement in its case-in-chief because it undermined the purpose and policy of Rule 410, SCRE.[4] Our supreme court affirmed Petitioner's conviction, ruling "a criminal defendant may waive the protections afforded by Rule 410[, SCRE]," and "[P]etitioner's [p]roffer [a]greement, entered with the advice and consent of counsel, waived the protections of Rule 410, SCRE." *Wills*, 409 S.C. at 185, 762 S.E.2d at 4.

Petitioner filed a PCR application and asserted he had received ineffective assistance of counsel. At Petitioner's PCR hearing, trial counsel testified he believed the proffer agreement "would get [Petitioner] out and, basically, the case would end" as long as Petitioner was truthful during his proffer session. Trial counsel stated he frequently advised clients to enter into proffer agreements and there was nothing unusual in the terms of Petitioner's proffer agreement that "jumped out" to him.

Regarding the polygraph examination, trial counsel admitted that "looking back on it in hindsight, that would be one area [where he] could've done things differently." Trial counsel recalled questioning the polygraph results but explained he did not arrange for Petitioner to take another one because Petitioner remained incarcerated and trial counsel wanted to keep the test "private so that the State wouldn't know about it." Trial counsel felt Petitioner had always been truthful with him and testified he still did not think Petitioner "was the trigger man."

On cross-examination by the State, trial counsel conceded that in "hindsight, maybe it would've been better to give [Petitioner] some other advice." Nevertheless, trial counsel stated he felt the proffer agreement was the best course of action for Petitioner to take based on his firm belief that Petitioner had been truthful with him. Trial counsel stated he would advise a similarly situated client

---

[4] Rule 410(4), SCRE, prohibits the admission of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty . . . ."

to enter into a proffer agreement but conceded he "would be a lot stronger on the science and the procedure behind the polygraph . . . [i.e.,] how to go about challenging it better and making a stronger argument to the judge."

Hixson, the solicitor originally assigned to the case,[5] testified he offered Petitioner the proffer agreement because the State had little evidence in the case.[6] Hixson acknowledged "[t]he case itself was thin enough that absent [Petitioner] being a trigger man, there wasn't a lot of potential liability he was facing." Hixson testified he usually told defendants during a proffer session to "tell the truth" and specifically recalled telling Petitioner, "[D]on't straddle the fence here. You understand if you're telling the truth and you're not the trigger man involved in it, then you're only . . . dealing with . . . accessory type charges."

Hixson stated he was "really stunned" when Petitioner admitted he participated in a "murder for hire." Hixson recalled thinking he "made a big mistake" by offering the proffer agreement because it limited the purposes for which Petitioner's proffer session statement could be used. Hixson believed Petitioner had been truthful during the proffer session "because he was so forthright" and was surprised when he learned the polygraph results indicated Petitioner had been deceptive. Hixson testified the proffer agreement's polygraph examination requirement would have been normal.

While the PCR court acknowledged the proffer agreement ultimately did not inure to Petitioner's benefit, it noted "proper analysis of an allegation of ineffective assistance of counsel requires this [c]ourt to make every effort to set aside the distorting effect of hindsight and consider the decisions of counsel based on the information and circumstances available to him at the time they are made." The PCR court observed that Petitioner, trial counsel, and Hixson all testified the proffer agreement was advantageous to Petitioner and noted trial counsel had no indication the proffer agreement would fail because of Petitioner's dishonesty or disability. The PCR court also noted trial counsel "effectively and zealously" argued against the admissibility of Petitioner's proffer session statement in the State's case-in-chief at trial and preserved the objection for direct appeal. The PCR

---

[5] Hixson recused himself from the case because he was concerned he could be called to testify about statements he made during Petitioner's proffer session.
[6] Hixson recalled the State's main evidence was a report that someone saw a car similar to Petitioner's car enter and leave the area where officers discovered Lee's body.

court reasoned Petitioner's arguments "were not adequate to turn the opinion in the [s]upreme [c]ourt and, as such, this [c]ourt cannot now conclude that they would have done so at the trial level." Accordingly, the PCR court denied Petitioner's application for PCR relief. This court granted Petitioner's petition for a writ of certiorari.

## STANDARD OF REVIEW

"In post-conviction proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "The applicant has the burden of establishing his entitlement to relief by a preponderance of the evidence." Rule 71.1(e), SCRCP. "[An appellate court] gives great deference to the factual findings of the PCR court and will uphold them if there is any evidence of probative value to support them." *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016). "Questions of law are reviewed de novo, and [an appellate court] will reverse the PCR court's decision when it is controlled by an error of law." *Id.*

## LAW/ANALYSIS

Petitioner argues the PCR court erred in concluding he did not receive ineffective assistance of counsel. Specifically, Petitioner asserts counsel was deficient in (1) his interpretation of the proffer agreement's benefits to Petitioner and (2) not understanding a trial court could find the proffer agreement waived the protections of Rule 410, SCRE, and allowed the State to use Petitioner's proffer session statement in its case-in-chief.[7] We disagree.

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013). "In order to establish a claim for ineffective assistance of counsel, the applicant must show that: (1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case." *Speaks*, 377 S.C. at 399, 660 S.E.2d at 514. "Failure to make the required showing of either

---

[7] While the efficacy of polygraphs was discussed at the PCR hearing, Petitioner does not assert trial counsel was ineffective for advising him to enter into a proffer agreement with a polygraph examination requirement or for failing to schedule another polygraph examination.

deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland v. Washington*, 466 U.S. 668, 700 (1984).

Trial counsel's performance "is measured by an objective standard of reasonableness." *Taylor*, 404 S.C. at 359, 745 S.E.2d at 102. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Further, "[trial c]ounsel's performance is accorded a favorable presumption, and a reviewing court proceeds from the rebuttable presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Smith v. State*, 386 S.C. 562, 567, 689 S.E.2d 629, 632 (2010) (quoting *Strickland*, 466 U.S. at 690). "Accordingly, when counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel." *Id.*

Here, the PCR court properly determined Petitioner did not receive ineffective assistance of counsel. Trial counsel testified he advised Petitioner to enter the proffer agreement because it would have mitigated the consequences of his pending charges and prevented the State from bringing additional charges against Petitioner for Lee's murder. Trial counsel understood Petitioner had to be truthful during his proffer session and had no reason to believe Petitioner's polygraph examination results would indicate he had been deceptive. Trial counsel believed Petitioner had been truthful to him because he had known Petitioner and his family for "a long time," and Petitioner's proffer session statement was consistent with what Petitioner privately told trial counsel. Therefore, trial counsel articulated a valid reason for advising Petitioner to enter the proffer agreement.

While trial counsel admitted in hindsight he might have advised Petitioner differently and would have been more rigorous in understanding and arguing polygraph science, trial counsel maintained he thought the proffer agreement was the best option for Petitioner because he was convinced Petitioner had been truthful. Additionally, when trial counsel advised Petitioner to enter the proffer agreement, it was not settled law in South Carolina that defendants could waive the protections of Rule 410, SCRE, for more than impeachment purposes. Trial counsel argued effectively enough to preserve that issue for direct appeal and could not have known our supreme court would ultimately rule defendants could waive

those protections.  Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.

Thus, the PCR court properly determined trial counsel's performance was not deficient because trial counsel articulated a valid reason for advising Petitioner to enter the proffer agreement.  Accordingly, the PCR court properly denied Petitioner's application for PCR relief, and Petitioner's conviction for murder is

**AFFIRMED.**

**WILLIAMS, C.J. and VINSON, J., concur.**